**WEST ANDERSON PLAZA, Appellant,**

v.

**Exxon Mehdi FEYZNIA, Appellee.**

**No. 3–92–453–CV.**

Court of Appeals of Texas,
Austin.

May 11, 1994.

Rehearing Overruled June 22, 1994.

---

Michael Deitch, Deitch & Hamilton, P.C., Austin, for appellant.

Roy O. Smithers, Bragg, Chumlea, McQuality, Smithers & Curry, Austin, for appellee.

Before CARROLL, C.J., and ABOUSSIE and JONES, JJ.

## ON MOTION FOR REHEARING

JONES, Justice.

The opinion and judgment issued herein on August 25, 1993, are withdrawn, and the following opinion is substituted for the earlier one.

West Anderson Plaza ("the Landlord") sued Exxon Mehdi Feyznia ("the Tenant") in a forcible-detainer action. The Tenant counterclaimed, asserting violations of section 17.-46(b)(12) of the Deceptive Trade Practices Act ("DTPA"), Tex.Bus. & Com.Code Ann. §§ 17.41–.63 (West 1987 & Supp.1994). The jury found that after having received due notice from the Landlord and an opportunity to cure, the Tenant had breached the lease. The jury also found, however, that the Landlord had damaged the Tenant in the amount of $1,000 by misrepresenting that the lease "conferred or involved rights, remedies or obligations which it did not have or involve," a violation of section 17.46(b)(12) of the DTPA. Based on the jury's verdict, the trial court rendered judgment that the Landlord recover possession of the premises, but that the Tenant recover from the Landlord $3,000 in damages and "additional damages" based on the Tenant's DTPA counterclaim. Further, because the jury found the same amount of attorney's fees for each party, the trial court ordered that neither party was entitled to a net recovery of attorney's fees from the other. On appeal, the Landlord asserts that the evidence was insufficient to support the jury's findings regarding the Tenant's DTPA counterclaim, including the findings of damages and attorney's fees. In two cross-points, the Tenant asserts that the evidence was insufficient to support the jury's findings that he breached the lease and that the trial court therefore erred in awarding the Landlord its attorney's fees.

We will reverse and render in part and modify and affirm in part.

## FACTUAL AND PROCEDURAL BACKGROUND

In April 1988 the Landlord and the Tenant executed a written lease agreement wherein the Tenant leased from the Landlord a commercial space in the West Anderson Plaza Shopping Center in Austin. The Tenant operated a business on the leased premises under the name of Le Fun Family Game Center. At the same time the lease agreement was executed, the parties executed an addendum to the lease, which provided in part:

*Covenant*. . . . . [Tenant] agrees that it will not allow loitering or other loud disturbing behavior by its customers or those who are upon the parking lot or outside of the leased premises which causes a disturbance to other tenants or customers of the shopping center; that it will not permit any of its customers or licensees to destroy any of the property of the Landlord located in the center, or of any other tenant located in the center.

*Remedy for Breach of Covenant.* [Tenant] agrees that if Landlord notifies [Tenant] that it has breached the above covenant by giving [Tenant] written notice of such breach that [Tenant] will cause the breach to be cured within five (5) calendar days from the date of such notification. [Tenant] further agrees that if Landlord notifies tenant of a second breach of this covenant within a ninety (90) day period, that [Tenant] will retain a security guard to enforce the terms of this covenant.

On August 8, 1991, the Landlord notified the Tenant by letter that it had received complaints that the Tenant's patrons were "creating a nuisance, annoying other tenants within the Center, and intimidating potential customers." Further, the Landlord indicated that the shopping center had "experienced repeated damage to the landscaping and irrigation system outside your location due to vandalism." Accordingly, the Landlord stated that the Tenant had breached the addendum's "no-disturbance" covenant and that

"such breach must be cured within five days from receipt of this notice."

On September 23, 1991, the Landlord again notified the Tenant by letter that "[y]our customers continue to loiter in and around your premises and the parking lot, damage property belonging to other tenants and their customers, and engage generally in abusive, disruptive, and disturbing behavior in and around your premises." Accordingly, the Landlord indicated that this letter was to serve as notice of a second breach and stated that "we hereby demand that you immediately hire a security guard" and that "we expect to see a security guard on your premises according to the terms of the Addendum no later than one (1) day after you receive this letter."

On October 10, 1991, after some oral communications between the parties concerning whether the Tenant was required to hire a "licensed" security guard, the Landlord again notified the Tenant by letter that "it is the Landlord's position that you must immediately hire a security guard from a licensed security company." The letter indicated that the Tenant had until October 12 to engage such services.

On November 10, 1991, the Landlord sent the Tenant a letter stating that "[y]ou have defaulted by failing to retain a security guard. Because of this default, [the Landlord] intends to terminate this Lease effective as of November 25, 1991." By letter dated November 26, the Landlord notified the Tenant that the lease was terminated effective November 25.

Following termination of the lease and refusal of the Tenant to vacate the premises, the Landlord initiated this forcible-detainer action. The Tenant asserted several counterclaims, including a claim that the Landlord's letters to the Tenant contained misrepresentations in violation of section 17.-46(b)(12) of the DTPA. Based on the jury's verdict, the trial court rendered judgment that the Landlord recover possession of the premises and that the Tenant recover $3,000 in damages and additional damages on his DTPA counterclaim. Further, because the jury found an equal amount of attorney's fees for each party, the trial court ordered that

neither party was entitled to a net recovery of attorney's fees.

## THE LANDLORD'S POINTS OF ERROR

The Landlord asserts five points of error challenging the trial court's judgment. In its first and fourth points of error, the Landlord complains that the evidence is legally and factually insufficient to support the jury's affirmative finding that the Landlord had misrepresented the rights, remedies, or obligations of the lease and that such misrepresentation was a producing cause of damage to the Tenant. In the trial below, the Tenant asserted that the Landlord had made two misrepresentations regarding the lease in violation of section 17.46(b)(12) of the DTPA: (1) representing that a *licensed* security guard was required under the terms of the lease addendum, and (2) demanding that the Tenant provide a security guard in one or two days from the date the Landlord notified the Tenant that such services were required. The Landlord contends that such statements were not actionable under the DTPA; it also argues there is no evidence that its statements about the parties' contractual rights and duties were a producing cause of damages to the Tenant. We agree with both contentions.

## 1. APPLICABILITY OF THE DTPA

The Landlord asserts first that its statements were not actionable under section 17.-46(b)(12) of the DTPA. As to the first claimed misrepresentation, the lease addendum required the Tenant to "retain a security guard" on the occurrence of certain conditions. The Tenant has never disputed that such conditions occurred and that he was therefore required to retain a security guard. The parties disagreed, however, on whether a *licensed* security guard was required. The Tenant interpreted the lease addendum as allowing any designated person, even an employee of the Tenant who was performing other responsibilities, to serve as the required security guard. The Landlord, on the other hand, interpreted the lease addendum as contemplating a licensed security guard, as indicated in its October 10, 1991 letter:

This letter is to formally notify you that it is the Landlord's position that you must immediately hire a security guard from a licensed security company.

The covenant specifically requires you to "retain a security guard." It does not expressly or impliedly allow you to use an unlicensed employee to serve in that capacity.

■ Section 17.46(b)(12) of the DTPA declares the following to be an unlawful deceptive trade practice: "representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." The Tenant asserts, in essence, that this section creates a cause of action for *any* statement about contractual rights or obligations that is later determined to be incorrect. We disagree.

■ First, we must not decide the scope or meaning of statutory language by a bloodless literalism in which text is viewed as if it had no context. *Brown v. Owens*, 674 S.W.2d 748, 750 (Tex.1984); *State v. Terrell*, 588 S.W.2d 784, 786 (Tex.1979); *State v. Dyer*, 145 Tex. 586, 200 S.W.2d 813, 815 (1947). The Texas Supreme Court has held that in construing the DTPA,

[t]he primary emphasis is on the intention of the legislature, keeping in view "the old law, the evil and the remedy." Legislative intent should be determined from the language of the entire Act and not isolated portions. The court is not necessarily confined to the literal meaning of the words used, and the legislative intent rather than the strict letter of the Act will control.

*Pennington v. Singleton*, 606 S.W.2d 682, 686 (Tex.1980); *see also Big H Auto Auction, Inc. v. Saenz Motors*, 665 S.W.2d 756, 758 (Tex.1984). The underlying purposes of the DTPA are "to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty." DTPA § 17.44. While the Act must be liberally construed to promote those purposes, it need not be construed to go *beyond* such purposes. *See Celotex Corp. v. Gracy Meadow Owners Ass'n*, 847 S.W.2d 384, 390 (Tex.App.—Austin 1993, writ denied). We believe that pe-

nalizing the expression of reasonable and honestly held opinions regarding the meaning of contract language goes far beyond protecting consumers against false, misleading, and deceptive business practices and was not intended by the legislature.

■ Second, in construing a statute, courts should consider "the entire act, its nature and object, and the consequences that would follow from each construction." *Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245, 249 (Tex.1991); *see also* Tex.Gov't Code Ann. §§ 311.023(1), (5) (West 1988). We are also authorized to presume that, in enacting a statute, the legislature intended "a just and reasonable result." Tex. Gov't Code Ann. § 311.021(3) (West 1988). It is well settled that courts presume the legislature did not intend for a statute to produce unjust, absurd, or unreasonable results. *See State v. Mauritz–Wells Co.*, 141 Tex. 634, 175 S.W.2d 238, 242 (1943); *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991); *King v. Texas Employers' Ins. Ass'n*, 716 S.W.2d 181, 183 (Tex.App.—Fort Worth 1986, no writ). We believe that accepting the construction urged by the Tenant in this case would produce a result that is unjust and unreasonable, if not absurd. The existence of disagreements about the meaning of contractual provisions—or *any* language, for that matter—is the rule rather than the exception. Common experience teaches that such disagreements need not involve any hint of unfairness or deception. Yet the Tenant's proposed construction of section 17.46(b)(12) would punish the "losing" party in every such disagreement. A party to a contract could not say to the other party, "I think this contract permits me to do X," or "I believe this agreement requires you to do Y," without fearing that damages, attorney's fees, and some amount of DTPA "additional damages" could later be awarded against him if his interpretation proved to be incorrect. At best, such a construction would have a dramatic chilling effect on business relations; at worst, it would create commercial chaos. We decline to adopt it.

Having concluded that the Tenant's position of absolute literalism is unacceptable, the question remains: By what standard

should courts decide whether statements about contractual rights and obligations fall within the ambit of section 17.46(b)(12)?

In an apparent search for a bright-line rule, one court has recognized a distinction between representations that are "factual" and those that are "interpretive," holding that the former may be actionable while the latter are not, at least in the absence of some evidence of overreaching or victimizing. *See Group Hospital Servs., Inc. v. One & Two Brookriver Ctr.,* 704 S.W.2d 886, 888–89 (Tex. App.—Dallas 1986, no writ). This distinction seems to us not wholly satisfactory, because the line between factual and interpretive statements is sometimes blurred. Indeed, a single statement can easily contain elements of both factual assertion and legal interpretation, analogous to the familiar but recondite "mixed question of law and fact."

Another court has focused on whether the relevant contract language is unambiguous or ambiguous, holding that incorrect representations concerning an unambiguous provision may be actionable, while such representations concerning an ambiguous provision are not actionable. *See Quitta v. Fossati,* 808 S.W.2d 636, 644–45 (Tex.App.—Corpus Christi 1991, writ denied); *see also Enterprise–Laredo Assocs. v. Hachar's, Inc.,* 839 S.W.2d 822, 828–29, 832–33 (Tex.App.—San Antonio) (citing both *Group Hospital* and *Quitta* approvingly), *writ denied per curiam,* 843 S.W.2d 476 (Tex.1992). Again, this distinction, while helpful, does not seem to us wholly satisfactory. For example, it has been argued that a misrepresentation about rights or obligations arising from unambiguous contract language is "superfluous to the parties' legal obligations and should be simply refuted or ignored by the other party." William E. Marple, *Requiescat for an Epitaph: Breach of Contract is Not a Tort,* 56 Tex.B.J. 656, 659 (1993).

In actions for common-law fraud, courts have distinguished between statements of "fact" and statements of "opinion," holding that false statements of fact may be actionable while statements of opinion as to a point of law or the legal effect of a document generally will not support an action for fraud. *See Fina Supply, Inc. v. Abilene Nat'l Bank,*

726 S.W.2d 537, 540 (Tex.1987); *Safety Casualty Co. v. McGee,* 133 Tex. 233, 127 S.W.2d 176, 177–79 (1939). This distinction is not directly applicable here, of course, because "misrepresentations which do not necessarily constitute common law fraud may be actionable under the DTPA." *Eagle Properties, Ltd. v. Scharbauer,* 807 S.W.2d 714, 724 (Tex. 1990). Nonetheless, the common-law fraud cases have approved certain exceptions to the general rule denying liability for the statement of an opinion, and in that regard we believe they are helpful:

> [I]n certain circumstances a statement of opinion [as to a point of law or the legal effect of a document] can rise to the level of fraud. A party having superior knowledge, who takes advantage of another's ignorance of the law to deceive him by studied concealment or misrepresentation, can be held responsible for this conduct. Relief may also be granted for misrepresentation as to a point of law or of legal rights where there is a fiduciary or confidential relationship of trust between the parties. Additionally, misrepresentations involving a point of law will be considered misrepresentations of fact if they were intended and understood as such.

*Fina Supply,* 726 S.W.2d at 540.

Rather than attempting to determine the applicability of the DTPA from a single factor such as ambiguity, we think it appropriate to view the totality of the circumstances, taking into consideration all relevant factors, including:

- Whether the representation was clearly factual, clearly interpretive, or some less clear combination of the two;

- Whether the relevant contractual language was ambiguous or unambiguous;

- Whether the parties were in a substantially equal position of knowledge and information;

- Whether there was evidence of overreaching or victimizing;

- Whether there was evidence of unconscionable conduct;

- Whether there was a confidential or fiduciary relationship between the parties.

■ From a review of the circumstances in the present case, we do not believe the Landlord's statement that the lease required the Tenant to hire a *licensed* security guard was actionable under section 17.46(b)(12) of the DTPA. First, the representation was clearly interpretive; indeed, the Landlord's letter begins with the phrase, "It is the Landlord's position ...," and later accurately quotes the actual contract language. Next, the relevant contract language is, in our opinion, ambiguous on the issue of licensing; that is, after applying the usual presumptions, the lease provision is still reasonably susceptible to more than one meaning on this issue. Further, the evidence does not reflect that either party had substantially superior access to knowledge or information; nor does there appear to have been any overreaching or victimizing. There is no evidence of unconscionable conduct by the Landlord. Finally, there was no confidential or fiduciary relationship between the parties. Viewing the totality of the circumstances, we hold that as a matter of law the Landlord's statement concerning the duty to hire a licensed security guard, even though apparently found by the jury to be incorrect, was not actionable under section 17.46(b)(12) of the DTPA.[1]

As to the second claimed misrepresentation, both parties agree that the lease addendum did not specify the time limit within which the Tenant was required to hire a security guard after receiving a second notice of breach of the no-disturbance covenant. The addendum simply stated that if the Landlord notified the Tenant of a second breach within a ninety-day period, the Tenant would "retain a security guard to enforce the terms of this covenant." The Tenant was notified of the second breach by letter on September 23, 1991. In the same letter, the Landlord indicated that "we hereby demand that you immediately hire a security guard" and that "we expect to see a security guard on your premises according to the terms of the Addendum no later than one (1) day after you receive this letter." More than two weeks later, on October 10, in response to the Tenant's inquiry regarding the use of employees as security guards, the Landlord indicated by letter that it expected the Tenant to employ a licensed security guard by October 12, 1991.

■ Based on these statements by the Landlord, the Tenant asserts that "[c]learly, if the Lease did not specify a time limit, the representation that [the Tenant] had one day under the Addendum to hire a guard was a factual misrepresentation." We disagree. The phrase used by the Landlord, "we expect to see," is not a factual representation that the lease contains an express provision requiring one-day compliance; rather, it implies a personal interpretation. Moreover, because the lease did not specify a time limit, the Tenant would have a "reasonable time" to comply. *See Moore v. Dilworth,* 142 Tex. 538, 179 S.W.2d 940, 942 (1944); *Pearcy v. Environmental Conservancy of Austin & Central Texas, Inc.,* 814 S.W.2d 243, 246 (Tex.App.—Austin 1991, writ denied). Such a vague limitation is open to interpretation and therefore is, in the sense that is important here, ambiguous. The Tenant also asserts that "one day is not a reasonable time in which to negotiate a contract for security services." We construe this as a claim that the Landlord's interpretation imposing a one-day time limit within which to comply with the security-guard provision was overreaching or victimizing. Under the terms of the lease addendum, however, a security guard would only be required after the covenant to prevent disruptive conduct on the premises had been breached twice. The Landlord had twice notified the Tenant of incidents of vandalism, property damage, and abusive, disruptive, and disturbing behavior in and around the leased premises. Due to the nature of the covenant breached, the

---

1. The case of *Leal v. Furniture Barn, Inc.,* 571 S.W.2d 864 (Tex.1978), is readily distinguishable. There, the Leals had contracted to pay $40 per month for certain furniture, which was to be delivered only after the full price was paid. When the Leals fell behind in their payments, the furniture store told them that if they did not bring their payments current they would forfeit all the money they had already paid, even though the contract did not provide for any such forfeiture. Thus, the store's representation was not "clearly interpretive," the contract was not ambiguous on the relevant issue, the parties were obviously not in a substantially equal position of knowledge and information, and there was strong evidence of overreaching and victimizing.

Landlord interpreted the security-guard provision as requiring virtually an immediate response from the Tenant. Based on the facts of this case, we do not believe such an interpretation is unreasonable on its face; in other words, the Landlord's expectation that the Tenant hire a security guard within one day of notification does not, by itself, show that the statement was unreasonable, overreaching, or victimizing. Indeed, the Tenant does not point to any evidence that he was in fact unable to comply with the time limit stated by the Landlord. In fact, although the Landlord indicated in its September 23 letter that it expected one-day compliance with the security-guard provision, the Landlord subsequently gave the Tenant until October 12 to comply. Moreover, the Landlord did not notify the Tenant that it intended to terminate the lease based on the Tenant's failure to hire a licensed security guard until November 10 and did not terminate the lease until November 25. Viewing the totality of the circumstances, we conclude that the record contains no evidence that the Landlord's statement that it expected the Tenant to hire a security guard within one day of notification was actionable under section 17.46(b)(12) of the DTPA.

## 2. PRODUCING CAUSE

■ Even if we are incorrect about the foregoing, however, the Tenant still may not recover under its DTPA claim. The Landlord also asserts in points of error one and four that the record contains legally and factually insufficient evidence that its statements regarding the lease were a producing cause of damage to the Tenant. The sole injury to which the Tenant testified was $1,502.05, which represented the difference between the cost of using a licensed security guard and using an existing employee as a security guard. The jury, limited by the charge to considering only this injury, found damages of $1,000; the judgment awarded the Tenant that amount, trebled pursuant to section 17.50(b)(1) of the DTPA.

"Producing cause" was correctly defined in the jury charge as "an efficient, exciting or contributing cause, which, in a natural sequence, produced the damages or harm com-plained of, if any." *See Teague v. Bandy*, 793 S.W.2d 50, 57 (Tex.App.—Austin 1990, writ denied). In the present case, however, the timing of the relevant events precludes the conclusion that the Landlord's representations caused the Tenant's damages. The Tenant's own testimony showed that he did not finalize the hiring of a licensed security guard until November 29, 1991, *after* the Landlord had terminated the lease on November 25 and demanded that the Tenant vacate the premises. The lease addendum expressly states that "[i]f Landlord elects to terminate this lease, then both [Tenant] and Landlord shall have no further obligations under the terms of this lease and [Tenant] shall immediately surrender possession to Landlord." As discussed above, the Landlord properly terminated the lease and was entitled to possession of the premises.

Paragraph 19 of the lease provided that "any holding over by the [Tenant] ... after the expiration of this lease shall operate and be construed as a tenancy from month to month." The Tenant argues that when he refused to vacate the premises after the Landlord terminated the lease, he was merely "holding over," thereby calling into play the terms of Paragraph 19. Through this reasoning, the Tenant contends that when he hired a licensed security guard on November 29, 1991, the parties were still operating under the terms of the lease, thus preserving his argument that the Landlord's misrepresentations were a producing cause of his damages. We disagree. The lease did not "expire," it was terminated. The express language of the addendum that upon termination the parties would have "no further obligations under the terms of this lease" evidences an unmistakable intent to treat such a situation differently from a mere expiration of the lease term. After termination, the Tenant might thereafter have been liable to the Landlord for *damages* if he refused to vacate or damaged the property, but he would not be liable "under the lease." *See Rohrt v. Kelley Mfg. Co.*, 162 Tex. 534, 349 S.W.2d 95, 97–98 (1961). Likewise, because the lease was terminated here, the Tenant cannot claim as damages any expenses that he voluntarily incurred for the continued operation of his business on the leased premis-

es at a time when he had no legal right to be there.

We sustain the legal-sufficiency challenges in points of error one and four.

In its second point of error, the Landlord complains that the evidence was insufficient to support the jury's answer to question number four, regarding the Tenant's damages caused by the Landlord's representations in violation of section 17.46(b)(12). In light of our foregoing conclusion that there was no evidence to support the answer to the misrepresentation issue, we need not address the Landlord's challenge to the damages question.

In its third and fifth points of error, the Landlord complains that the evidence was insufficient to support either the submission of the question to the jury or the jury's affirmative finding as to the amount of attorney's fees the Tenant should recover based on his DTPA counterclaim. Only consumers who prevail are entitled to an award of attorney's fees under the DTPA. Tex.Bus. & Com.Code Ann. § 17.50(d) (West 1987). Because we have concluded there was no evidence to support the Tenant's DTPA counterclaim, he has not prevailed and is not entitled to a recovery of attorney's fees. We sustain points of error three and five.

### THE TENANT'S CROSS–POINTS

In two cross-points, the Tenant complains that the evidence is insufficient to support the jury's finding that he breached the lease agreement and that, as a result, the trial court erred in awarding the Landlord possession of the premises and attorney's fees. The Tenant contends that the evidence is insufficient to support the jury's finding because he was not given thirty days to cure after notice of default.

In his first cross-point, the Tenant argues generally that the Landlord's failure to give him proper notice rendered the Landlord's termination of the lease ineffective. In answer to question one, the jury found that the Tenant had breached the lease agreement after due notice and opportunity to cure. In the context of this forcible-detainer suit, question one was submitted to the jury solely for the purpose of determining which party had the right to possession of the leased premises. The trial court recited in its judgment that, because the jury found that the Tenant had breached the lease, "[t]he jury returned a verdict in favor of [the Landlord] on its cause of action for possession of the premises." Based on this verdict, the trial court rendered judgment that the Landlord recover possession of the leased premises.

In a forcible-detainer action, the issue of possession is not appealable where, as here, the premises are used for commercial purposes: "A final judgment of a county court in a forcible entry and detainer suit or a forcible detainer suit may not be appealed on the issue of possession unless the premises in question are being used for residential purposes only." Tex.Prop.Code Ann. § 24.-007 (West Supp.1994). Further, a finding on a threshold issue such as the adequacy of notice before termination cannot be appealed if such finding is merely an element of the issue of possession. *Academy Corp. v. Sunwest N.O.P., Inc.,* 853 S.W.2d 833 (Tex. App.—Houston [14th Dist.] 1993, writ denied) (existence of landlord-tenant relationship is element of possession issue and therefore not reviewable); *Powell v. Mel Powers Inv. Builder,* 590 S.W.2d 837, 838–39 (Tex. Civ.App.—Houston [14th Dist.] 1979, no writ) (adequacy of notice is element of possession issue and therefore not reviewable).

In his second cross-point, the Tenant contends that he is not appealing "the issue of possession, but rather the issue of attorneys' fees." The Tenant cites two cases for the proposition that a party may appeal an award of damages or attorney's fees in the context of a forcible-detainer action. *See RCJ Liquidating Co. v. Village Ltd.,* 670 S.W.2d 643, 644 (Tex.1984); *Lee McGuire 1900 Co. v. Inventive Indus., Inc.,* 566 S.W.2d 95, 97 (Tex.Civ.App.—Beaumont 1978, writ dism'd). These cases are not applicable here. First, they were decided under an earlier statutory provision that contained substantially different wording from the current statute. *Compare* Tex.Prop. Code Ann. § 24.007 (West Supp.1994) *with* Revised Statutes, 39th Leg., R.S., § 1, art. 3992, 1925 Tex.Rev.Civ.Stat. 2, 1083 (since

repealed). Second, even assuming that an award of damages or attorney's fees may, for some purposes, be appealed under present section 24.007, the Tenant in the present case challenges the attorney's fee award by attacking a jury finding that was material only to the issue of possession. Under the terms of the lease agreement between the parties, attorney's fees were recoverable for the "successful prosecution or defense of any legal or equitable proceedings to construe this lease or enforce any right or obligation arising from it." Further, the Property Code provides that "if a written lease entitles the landlord to recover attorney's fees, a prevailing landlord is entitled to recover reasonable attorney's fees from the tenant." Tex.Prop. Code Ann. § 24.006(b) (West Supp.1994). Thus, in the present case, the only prerequisite for the recovery of attorney's fees is that the Landlord "prevail" and be "successful."

■ Here, the Landlord clearly "prevailed in" and "successfully prosecuted" its forcible-detainer suit, because it was awarded possession. The Landlord has, therefore, satisfied the contractual and statutory prerequisite for recovering its attorney's fees. Moreover, because the issue of possession may not be appealed, there is no way the Landlord could, in this appeal, lose its status as the prevailing and successful party in the forcible-detainer suit.

■ The Landlord's right to recover its attorney's fees in this case is based on the following logical application of law to facts: (1) If the Tenant breached the lease agreement, the Landlord was entitled to terminate the lease and obtain possession of the leased premises; (2) if the Landlord was entitled to possession, which the Tenant refused to yield, the Landlord was entitled to prevail in its forcible-detainer action; (3) if the Landlord prevailed in its forcible-detainer action, the Landlord was entitled to recover its attorney's fees. The Tenant urges us to determine that the evidence was insufficient to support the jury's finding that the Tenant breached the lease and, on that determination, reverse the award of attorney's fees. However, because the breach-of-lease finding is, in this case, material only to the possession issue, we are statutorily prohibited from

reviewing that finding. *See* Prop.Code § 24.-007.

Having no jurisdiction to consider such a complaint, we do not reach the merits of the Tenant's cross-points.

## CONCLUSION

Based on the above analysis, (1) we reverse the judgment of the trial court awarding damages and attorney's fees to the Tenant, and we render judgment that the Tenant take nothing by his DTPA counterclaim; (2) we conclude that this Court is without jurisdiction to consider the Tenant's cross-points; and (3) we modify the trial court's judgment to award the Landlord $34,000 for attorney's fees through trial, plus an additional $7,000 for attorney's fees through appeal to this Court, plus an additional $5,000 if this cause is appealed to the Supreme Court of Texas; as modified, we affirm the remainder of the judgment.

ABOUSSIE, Justice, concurring.

I concur in the result.

The Tenant complained that the Landlord misrepresented to him the terms of their lease and that, as a result, he suffered damage. The Tenant sought recovery under the Deceptive Trade Practices Act, which clearly prohibits one from representing that an agreement confers or involves obligations that it does not have or involve. Tex.Bus. & Com.Code Ann. § 17.46(b)(12) (West 1987 & Supp.1994). The jury found that the Landlord had violated the statute. On appeal, the majority holds that, despite the Landlord's incorrect representation of the terms of their lease and the Tenant's duties thereunder, the Landlord's conduct is not actionable under the DTPA.

In reaching its result, the majority determines that the relevant statute must be applied, not literally, but on a case by case basis, considering the totality of the circumstances in light of suggested factors it considers reasonable and relevant. Applying this analysis, the majority concludes that the Landlord's erroneous representation concerning the parties' agreement was merely an expression of his opinion and his incorrect

interpretation of the contract terms and did not, as a matter of law, constitute a violation contemplated by the Act.

I do not join in that portion of the majority's opinion pertaining to the applicability of the DTPA. The statute clearly prohibits a party from making incorrect representations; however reasonable the test proposed by the majority, an alleged violation is actionable and should be left to the jury to resolve. Nevertheless, we need not decide in this appeal when, if ever, a false representation is *not* actionable. Even assuming the Landlord's false representation violates the DTPA and is actionable thereunder, the Tenant cannot prevail.

As the majority sets out as the second basis for its holding, the record reflects that the Tenant's only actual damage was incurred *after* the lease was properly terminated. I agree. That being true, any misrepresentation the Landlord made could not have been a producing cause of any actual damage to the Tenant.

The sole injury suffered by the Tenant, according to his own testimony, was the expense he incurred in employing a licensed security guard after the Landlord had terminated the lease. The Tenant does not dispute this fact, arguing only that he had explored the possibility before the lease terminated. Even assuming the misrepresentation is actionable, the Tenant failed to prove that the Landlord's conduct was a producing cause of any damage to him and, therefore, he cannot recover. For this reason, the jury's damage verdict cannot be sustained.

Because I agree that the evidence is legally insufficient to prove that the Landlord's misrepresentations regarding the lease produced any actual damage to the Tenant, I join in the balance of the majority's opinion and judgment for the reasons set forth therein.