**Reversed and Rendered and Majority, Concurring, and Dissenting Opinions filed December 15, 2011.**

In The

# Fourteenth Court of Appeals

---

### NO. 14-10-00344-CV

---

### RED ROOF INNS, INC., Appellant

### V.

### DONNA JOLLY AND JAMES GLICK, Appellees

---

**On Appeal from the 125th District Court
Harris County, Texas
Trial Court Cause No. 2008-47688**

---

## MAJORITY OPINION[1]

A motel owner appeals a trial court's judgment in favor of motel guests based upon jury findings that the motel owner violated the Texas Deceptive Trade Practices Act, asserting that the evidence at trial would not enable reasonable and fair-minded people to find that the motel owner represented that the motel was secure. Because we

---

[1] This opinion is a majority opinion as to Section III.B. Justice Jamison concurs in the disposition but not the reasoning in this opinion as to Section III.A.

conclude the evidence is legally insufficient to support the trial court's judgment, we reverse and render judgment in favor of the motel owner.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs/appellees Donna Jolly and James Glick (hereinafter "the Guests") brought suit against defendant/appellant Red Roof Inns, Inc. (hereinafter, the "Motel"), asserting claims for negligence and violations of the Texas Deceptive Trade Practices Act ("DTPA") following their stay at an establishment owned and operated by the Motel. According to the pleadings, the Guests traveled to the Houston area to visit a relative in a hospital. The Guests attempted to lease a motel room from three or four different establishments, but none had vacancies. The Motel had a room available at its location in West Houston. According to the testimony at trial, there was a security guard on duty in the motel lobby at the time the Guests checked in between 2:30 a.m. and 3:00 a.m., and received a card key to their room. The Guests alleged that during their stay at the motel, their room was burglarized and jewelry valued at $50,000 was taken from the room and never recovered.

The Guests brought suit against the Motel, alleging the Motel was negligent and that it engaged in a false, misleading, or deceptive act or practice in leasing the motel room by (1) representing that goods or services are or would be a particular standard, quality, or grade when they were of another, and (2) failing to disclose information about goods or services that was known at the time of the transaction and that such failure to disclose information was intended to induce the Guests into a transaction they would not have entered had the information been disclosed. Following a trial on the merits, the jury found as follows:

- The Motel had been negligent and that its percentage of responsibility was five percent.
- The Motel had engaged in a false, misleading, or deceptive act or practice that the Guests relied upon to their detriment and that was a producing cause of the

2

Guests' damages. "False, misleading, or deceptive act or practice" was defined as a violation of subsection (7) or (24) of section 17.46(b) of the DTPA.

- The Motel did not knowingly violate the DTPA or engage in any unconscionable action or course of action.

- The Guests suffered damages of $25,000 as a result of the occurrence in question.

- A reasonable fee for the necessary services of the Guests' attorney through trial is $25,000.

The Guests elected to recover under their DTPA claim, and the trial court rendered judgment on this claim, awarding the Guests $25,000 in damages, pre-judgment interest, $25,000 in attorney's fees, and court costs.

On appeal, the Motel asserts in three issues that (1) the evidence is legally insufficient to support the jury finding that the Motel violated the DTPA; (2) the evidence is factually insufficient to support the jury finding that the Motel violated the DTPA; and (3) the trial court erred by not applying the percentage of responsibility found by the jury in rendering judgment on the Guests' DTPA claim.

## II. STANDARD OF REVIEW

When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 827. Our task is to determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *See id.* The factfinder is the only judge of witness credibility and the weight to give to testimony. *See id.* at 819.

## III. ANALYSIS

In its first issue, the Motel asserts the evidence is legally insufficient to support the jury's finding that the Motel violated the DTPA by either (1) representing that its goods or services are or would be of a particular standard, quality, or grade when they were of

another, or (2) failing to disclose information about goods or services that was known at the time of the transaction if such failure to disclose information was intended to induce the Guests into a transaction they would not have entered had the information been disclosed. *See* TEX. BUS. & COM. CODE ANN. § 17.46(b)(7),(24) (West 2002).

## A. Is the evidence legally sufficient to support the jury's finding under DTPA section 17.46(b)(7)?

Under the applicable standard of review, the evidence is legally insufficient to support a finding that the Motel made an express representation that its goods or services would be of a particular standard, quality, or grade when they were of another.[2] The Guests do not argue that the record contains legally sufficient evidence of such an express misrepresentation. The Guests argue that the evidence is legally sufficient to support a finding that the Motel represented that its premises was "a safe, secure, and monitored property" when the motel was actually "a crime-afflicted property that was not operated or monitored in a secure manner." The Guests do not assert that the record contains evidence of an express representation in this regard; rather, the Guests argue that there is legally sufficient evidence of such a representation based upon the following:

(1)     evidence that Glick inquired at the front desk as to whether there were safes available for the Guests' use and that the clerk told him that safes were not available because the safe at the front desk was only for the Motel's property;

(2)     evidence that a security guard was present in the lobby when the Guests checked into the motel; and

---

[2] The dissenting justice cites a general definition of "false, misleading, or deceptive acts or practices" taken from *Spradling v. Williams*, 566 S.W.2d 561, 562 (Tex. 1978). *See post* at p.2 (citing two cases for general definition taken from the *Spradling* case). But the jury charge in the case under review did not contain this definition. Such a general definition does not apply under the version of the DTPA applicable to the case under review; the applicable version of the DTPA limits the term "false, misleading, or deceptive acts or practices" to the acts enumerated in the subdivisions of section 17.46(b). *See* Tex. Bus. & Comm. Code Ann. §§ 17.46(d), 17.50(a)(1) (West 2011).

4

(3)     evidence that the clerk in the lobby gave the Guests a card key to gain entry to their room.

Regarding the evidence that the front-desk clerk told Glick that safes were not available for the Guests' use and that the safe at the front desk was only for the Motel's property, under the applicable standard of review, this evidence would not allow reasonable and fair-minded people to find the Motel represented that its premises were secure. *See West Anderson Plaza v. Feyznia*, 876 S.W.2d 528, 534 (Tex. App.—Austin 1994, no pet.) (holding that statement was too vague to imply representation that the tenant had only one day under the lease to hire a guard).

**1.     *What is the legal standard for determining if a representation may be implied under the DTPA?***

Pointing to the evidence that a security guard was in the lobby when the Guests checked in and that the Motel clerk gave them a card key, the Guests argue that a misrepresentation can be implied from this conduct. Actionable representations may be oral or written. *See Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 502 (Tex. 2001). Neither this court nor the Supreme Court of Texas has ever concluded that an actionable representation under the DTPA may be implied based solely upon a defendant's conduct. All of the justices on this panel agree that an actionable representation under the DTPA may be implied solely based upon conduct. Nonetheless, there is still the issue of when and under what circumstances such a representation may be implied. The parties have not cited and research has not revealed any case dealing with the legal standard to be used to determine whether and when a representation should be implied under the DTPA based upon a party's conduct. In these circumstances, when confronting an issue of first impression in an undeveloped area of the law, courts often examine how similar issues are considered in related areas of the law. This is the approach our high court has modeled. *See*, *e.g.*, *Methodist Healthcare Sys. of San Antonio v. Rankin*, 307 S.W.3d 283, 288–89 (Tex. 2010) (examining cases involving similar issues in analogous areas of the law in other states in determining issue of first impression under Texas Constitution's

5

open courts provision). Thus, the logical first step in the analysis in this case is to consider how courts view implied statements in other contexts.

Texas has a large body of law regarding the circumstances under which a covenant may be implied in a contract. Texas law does not favor implied covenants. *Chapman Children's Trust v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 437 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). As a general rule, Texas courts look only to the written contract to discern the obligations of the contracting parties. *Id.* Therefore, in this context, courts will look beyond the written agreement and imply a covenant only if it is necessary "to effectuate the intention of the parties as disclosed by the contract as a whole." *Id.* (quoting *Danciger Oil & Ref. Co. v. Powell*, 154 S.W.2d 632, 635 (Tex. 1941)). An implied covenant is sufficiently necessary to the parties' intentions only if the obligation "was so clearly within the contemplation of the parties that they deemed it unnecessary to express . . . ." *Id.* (quoting *Danciger Oil & Ref. Co.*, 154 S.W.2d at 635). Texas courts will not imply a covenant simply because it is needed to make the contract fair, wise, or just. *Id.* The parties' clear contemplation of the thing to be implied is the touchstone. *See id.*

Whatever the parameters of implied representations under the DTPA may be, they certainly could not be less than the law requires for recognition of an implied covenant in a contract. Accordingly, this court should not imply a representation based upon a party's conduct unless that representation was clearly contemplated by the party charged with making it. A representation should be implied from conduct only when, under the circumstances at the time the party engaged in that conduct, the only reasonable interpretation of that conduct is that the party meant to convey the representation in question.

2. *Is there more than one reasonable interpretation of the Motel's conduct in having a security guard on duty in the motel lobby?*

One of the Guests, James Glick, testified as follows:

6

- Glick entered the motel lobby between 2:30 a.m. and 3:00 a.m.

- There was a clerk and a security guard on duty in the lobby, and Glick "felt secure."

- Glick asked the clerk in the lobby if a motel room was available, and the clerk responded that a room was available.

- Other than the clerk's statement that there was a room available, nothing that the clerk said convinced Glick and his wife to stay at the motel.

- Glick did not ask the clerk about criminal activity in the area or about the safety or security of the motel.

- No representative of the Motel said anything false or misleading to the Guests before they checked into the motel.

Under the circumstances at the time in question, a representation that the motel was secure is not the only reasonable interpretation of the Motel's conduct in having a security guard on duty in the lobby. A review of the evidence reveals that any alleged representation by conduct would have to be based upon the Guests' assumptions rather than any unambiguous meaning conveyed by the Motel's conduct. To the extent that the mere presence of a security guard in the motel lobby between 2:30 a.m. and 3:00 a.m., when the Guests checked into the motel, is conduct, it is ambiguous conduct.

It would not be reasonable to conclude that the presence of the security guard in the lobby at this time constituted an assertion that the motel was secure. *See Mills v. Mest*, 94 S.W.3d 72, 75 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (holding that conduct consistent with nonmarital relationships was not sufficient to raise a fact issue as to whether couple had represented to others that they were married); *West Anderson Plaza*, 876 S.W.2d at 534. The presence of the security guard in the lobby at this time reasonably could be interpreted as any number of things, including:

- no assertion at all;

7

- an assertion that the Motel is providing a security guard only late at night;

- an assertion that the Motel is providing a security guard 24 hours a day;

- an assertion that the Motel is providing a security guard, but only in the lobby area;

- an assertion that the Motel is providing a security guard, but only to protect personal safety and not to protect personal property;

- an assertion that the Motel is providing a security guard to discourage crime on the premises but not to patrol and secure the premises;

- an assertion that the Motel is providing a security guard for a special event that is taking place on the premises; or

- various other assertions.

Even if it were reasonable to interpret the security guard's presence in the lobby as an assertion that the motel was safe, secure, or monitored, this interpretation would not be the only reasonable interpretation of this conduct.[3]

One of the Guests, Glick, stated that, after seeing the security guard, he "felt secure" and "a little bit more at ease that we had security on the premises." When a party chooses to make an assumption that may or may not be accurate rather than inquire about the unknown thing, the assumption is only a possibility, not a fact, and certainly not an actionable representation. A deception may be inferred from facts but not from

---

[3]The dissenting justice asserts that this court should not consider the various inferences from the presence of a security guard or the giving of a card key, because these inferences cannot be considered if there is direct evidence. But there is no direct evidence of a representation by the Motel that its goods or services would be of a particular standard, quality, or grade when they were of another. There is direct evidence of the presence of a security guard and the giving of a card key, but these matters are not part of the Guests' burden of proof.

8

imagination. At most, the Guests demonstrated that they made assumptions, not that the Motel made representations.

To qualify as an implied representation, the representation must be so obvious that it did not need to be stated. More importantly, there must be one and only one thing that the implied representation reasonably could mean. The law will not imply a representation when a party is said to have represented one thing by its conduct and the same action or conduct reasonably could be construed to have a different meaning.

**3.** *Is there more than one reasonable interpretation of the Motel's conduct in giving the Guests a card key?*

Under the circumstances at the time of the conduct, a representation that the motel was a secure property is not the only reasonable interpretation of the Motel's conduct in giving the Guests a card key. The fact that the lobby clerk gave one of the Guests a card key to enter their room is ambiguous conduct. Providing a card key to motel guests cannot reasonably be interpreted solely as an assertion that the motel is secure. *See Mills*, 94 S.W.3d at 75; *West Anderson Plaza*, 876 S.W.2d at 534. Providing a card key reasonably could be interpreted as any number of things, including:

- no assertion at all;

- a representation only that the card key is used to enter and exit the Guests' room but that the motel is generally open to the public;

- a representation that the card key is used to enter and exit the Guests' room and, during the night, for accessing the lobby;

- a representation that the card key is used to enter and exit the Guests' motel room and, during the night, for accessing the side doors to the motel;

- a representation that a card key will be required for the Guests to enter their room;

- a representation that a card key will be required for the Guests to enter their room, and to enter the lobby and side doors of the motel at night; or

- various other assertions.

Even if it were reasonable to interpret the Motel's provision of a card key to a motel guest as an assertion that the motel premises was secure, this interpretation would not be the only reasonable interpretation of this conduct.

If the Guests assumed that, because Glick received a card key, the motel premises were secure or all motel doors required a card key at all times, these assumptions were unreasonable. In addition, providing a card key cannot reasonably be interpreted as a representation that motel employees do not have access to the rooms of the Guests or that other motel guests with card keys could not access the motel. A reasonable person under the same circumstances might have concluded that the card key would give him access to his room, that other motel guests would be able to access the premises, that motel employees would have card keys to gain access to motel rooms, and that, under these circumstances, any valuables left in the motel room would not be secure. It is unreasonable to imply a broad representation that the motel premises were secure from the quotidian act of giving a guest a card key.

### 4. *Would it be consistent with precedent from the Supreme Court of Texas to imply a representation that the motel premises were secure merely from the presence of a security guard or merely from the giving of a card key?*

In analyzing the implied representation issue it is appropriate to consider whether implying the representations in question would be consistent with precedent from the Supreme Court of Texas. The implied representations at issue in this case concern the safety and security of premises. Generally, a person has no legal duty to protect another from the criminal acts of a third person. *See Timberwalk Apart., Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998). But, a landowner who controls the premises does have a duty to use ordinary care to protect invitees from criminal acts of third parties if

the owner knows or has reason to know of an unreasonable and foreseeable risk of harm to the invitee. *See Timberwalk*, 972 S.W.2d at 756. The central issue is whether the owner knew or should have known of an unreasonable and foreseeable risk of criminal conduct on the premises. *See id.* at 756–57. The Supreme Court of Texas requires that courts, in making this determination, consider whether any criminal conduct previously occurred on or near the property, how recently the conduct occurred, how often it occurred, how similar the conduct was to the conduct in question, and what publicity was given the occurrences to indicate that the property owner knew or should have known about them. *See id.* at 757.

If a misrepresentation under the DTPA could be implied from the presence of a security guard in the lobby or from giving motel guests a card key, a landowner who neither knew nor should have known of an unreasonable and foreseeable risk of criminal conduct on the premises still could be held liable for actual damages and attorney's fees regarding losses from criminal conduct on the premises. Such a holding would expand landowners' potential liability for damages from third-party crime significantly beyond that recognized in *Timberwalk*. This unwarranted expansion is yet another reason why a representation should not be implied under the facts of this case. *See Lively v. Adventist Health Sys./Sunbelt, Inc.*, 2004 WL 1699913, at *5 (Tex. App.—Fort Worth July 29, 2004, no pet.) (mem. op.) (holding that warranty by landowner that premises are safe should not be implied given the existence of *Timberwalk* duty that covers the same subject matter).

Under the applicable standard of review, the evidence at trial would not enable reasonable and fair-minded people to find that the Motel represented that its goods or services would be of a particular standard, quality, or grade when they were of another. *See* TEX. BUS. & COM. CODE ANN. § 17.46(b)(7). Therefore, the evidence is legally insufficient to support the jury's finding that the Motel violated section 17.46(b)(7) of the DTPA.

11

**B.    Is the evidence legally sufficient to support the jury's finding under DTPA section 17.46(b)(24)?**

We next examine whether the record contains legally sufficient evidence that the Motel failed to disclose information about goods or services that was known at the time of the transaction and that such failure to disclose information was intended to induce the Guests into a transaction they would not have entered had the information been disclosed. *See* TEX. BUS. & COM. CODE ANN. § 17.46(b)(24). To prevail on a claim for failure to disclose, the Guests must have presented evidence of the following: (1) a failure to disclose material information concerning goods or services, (2) which was known at the time of the transaction, (3) if such failure was intended to induce the consumer into a transaction, (4) which the consumer would not have entered had the information been disclosed. *See id.*; *Head v. U.S. Inspect. DFW, Inc.*, 159 S.W.3d 731, 744 (Tex. App.— Fort Worth 2005, no pet.).

The Guests claim that the Motel failed to disclose the following:

- In the prior two years, 152 service calls to a local law enforcement agency involving the motel had been placed, including 15 calls for burglary of motor vehicles;

- The electronic key lock on the outside door to the property was inoperable;

- The Motel was unable to generate an accurate electronic key report indicating who had entered and left a guest's motel room at certain times;

- The Motel did not have security cameras monitoring dark hallways;

- The Motel's housekeeping staff engaged in a practice of propping exterior doors open with towels and leaving doors open while working in other rooms; and

- The Motel's policy of not having a security guard on duty at all times despite the Guests' expressed safety concerns as evidenced by their inquiry of the availability of a safe to store valuables.

12

According to the Guests, the information was material, the Motel knew such information would deter guests from staying there, and by the Motel's withholding of such information, the Guests were induced into the transaction of leasing a motel room. A "transaction" contemplates an act or acts by which an alteration of legal rights occurs. *See Head*, 159 S.W.3d at 744. The Guests claim that had they known about these safety issues, they would not have chosen to stay at the Motel's establishment.

The record contains no evidence to suggest that the Motel withheld any information, known or otherwise, with the intention of inducing the Guests to lease a motel room. According to the record, Vincent Vittatoe, the senior director of safety and security for the Motel, testified that during the pendency of this lawsuit, he learned that law enforcement authorities had responded to 152 calls involving the West Houston motel in the prior two years. There is no evidence that Vittatoe knew this information when the Guests checked into the motel. Tammy Watkins was the general manager of the establishment from August 2007 until April 2009. From the time she began working on the motel premises, she was not aware of any allegations or reported incidents in which a guest room had been broken into or that a Motel employee had stolen something from a guest room using a key. The record contains no evidence that Watkins, Vittatoe, or any other Motel agent was aware of the 152 calls or any incidents in which property had been reported stolen from a guest room. Jolly also testified that after filing suit, an ensuing investigation revealed the 152 service calls for law enforcement to the motel.

The Guests claim that the jury reasonably could have inferred that the Motel was put on notice of the number of crime incidents involving the motel, referring to Vittatoe's testimony that an incident report should be completed each time an incident occurs on the motel premises. The Guests claim that there is a discrepancy between the number of incident reports generated by the Motel and the high number of service calls to which law enforcement officers responded in the two years preceding the transaction. Vittatoe testified that an internal report is not generated each time law enforcement officers enter

13

the motel premises. According to Vittatoe, officers who are "just marking out at the [Motel] property will show as a call for service." Vittatoe, as a former law enforcement officer, testified that a call for service may be related to traffic or multiple officers responding to a single call, as well as calls to report alleged criminal incidents. Vittatoe explained that, for this reason, the bare assertion of 152 service calls, without an evaluation of the types of calls for law enforcement or the reasons for the law-enforcement response, is not reflective of the security measures or crime at the motel.[4] Vittatoe also stated that, as a result of a merger of two corporations in 2007, when he became involved with this Motel property, he did not "get a lot of incident reports as would typically be reported." But, Vittatoe stated that he examined corporate records and spoke with his counterparts within the company and learned that no agent of the Motel was aware of any report reflecting a claim for a break-in of a guest room in the prior two years. An internal incident report was filed in this case.

There is no evidence that the Motel was aware of any time when the exterior door lock was inoperable before the Guests' transaction or that it knew of any unlit areas on the premises at the time of the transaction. There is no evidence suggesting that Watkins, Vittatoe, or any other Motel agent knew the key lock to the Guests' room would render an incorrect key log report until after they attempted to retrieve data from the lock following the Guests' report of the incident.

Vittatoe acknowledged that he was aware housekeeping staff would prop open doors from time to time, but that the Motel discouraged this practice. Similarly, the record reflects that the Motel did not contract for services for a security guard during the daytime because there were more Motel employees on duty at that time. Even if this

----

[4] According to Vittatoe's testimony, of the 152 service calls, 43 calls did not reflect the reason officers responded and 35 calls were duplicates of another previous call. Vittatoe testified that of the 152 calls for service, only 18 or 19 warranted concern. In his review of those 18 or 19 calls, one involved a 2007 aggravated robbery of the motel. Another call involved a 2007 sexual assault in which there were no arrests, leading Vittatoe to believe that the allegations warranting the service call were unfounded. With the exception of the alleged incident in this case, the remaining calls involved burglary of a motor vehicle.

14

information were known by the Motel at the time the Guests engaged in the transaction, there is no evidence that the Motel intentionally withheld this information with the intent of inducing the Guests to lease a room from the Motel. *See Patterson v. McMickle*, 191 S.W.3d 819, 827 (Tex. App.—Fort Worth 2006, no pet.).

The Guests assert that this court should presume that the Motel's non-disclosure was intentional, citing *Jones v. Ray Insurance Agency*, 59 S.W.3d 739, 750 (Tex. App.—Corpus Christi 2001), *pet. denied*, 92 S.W.3d 530 (Tex. 2002) (per curiam). Under *Jones*, in the absence of direct evidence of intent to induce, intent may be presumed if the undisclosed information was material and the information was known to the defendant. *See id.* at 750. Neither this court nor the Supreme Court of Texas has adopted this legal rule and we see nothing in the text of the statute that would suggest the Texas Legislature intended the defendant to carry the burden of proof in this circumstance. Accordingly, we decline to adopt the legal rule set forth in *Jones.*[5]

The Guests' arguments in support of legal sufficiency lack merit.[6] Considering the evidence in the light most favorable to the jury's verdict, indulging every reasonable inference that would support it, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not, the evidence at trial would not enable reasonable and fair-minded people to find that any failure to disclose information by the Motel was intended to induce the Guests into a

---

[5] In any event, although the Guests assert that the undisclosed information was material, the record evidence belies this assertion. According to the record, the Guests inquired only about the availability of a room and the availability of a safe for use by motel guests. Despite the unavailability of a safe for the Guests' needs, the Guests leased a room, indicating that a safe was immaterial to a decision to enter the transaction and that the Guests instead based their decision only on the vacancy at the motel. On this basis, the Guests' claims that an inquiry as to the availability of a safe equates with an inquiry as to the general security of the motel premises demonstrates the immateriality of the information.

[6] The Guests rely upon *Hartnett v. Hampton Inns, Inc.*, 870 S.W.2d 162 (Tex. App.—San Antonio 1993, writ denied). This case is factually distinguishable. The case under review does not involve an affirmative liability claim against any other party, as did *Hartnett*. *See id.* at 166. Moreover, there is no issue in the case *sub judice* that the trial court erred in failing to submit any question to the jury or in submitting a question to the jury in improper form. *See id.*

15

transaction they would not have entered had the information been disclosed. *See Patterson*, 191 S.W.3d at 827; *Head*, 159 S.W.3d at 744. Therefore, the evidence is legally insufficient to support the jury's finding that the Motel violated the section 17.46(b)(24) of the DTPA.

## IV. CONCLUSION

The evidence is legally insufficient to support the jury's finding in response to question 5 of the jury charge that the Motel violated the DTPA. Accordingly, we sustain the Motel's first issue,[7] reverse the trial court's judgment in favor of the Guests, and render a take-nothing judgment in favor of the Motel.[8]

/s/      Kem Thompson Frost
         Justice

Panel consists of Justices Frost, Jamison, and McCally. (Jamison, J., concurring) (McCally, J., dissenting).

---

[7]Because we sustain the Motel's first issue, we need not and do not address its second and third issues.

[8] The Guests argue that appellate costs should be taxed against the Motel under Texas Rule of Appellate Procedure 43.4, entitled "Judgment for Costs in Civil Cases." They assert good cause exists because the Motel requested 370 pages of the clerk's record that they claim was unnecessary to the appeal. *See* TEX. R. APP. P. 43.4 ("In a civil case, the court of appeal's [sic] judgment should award to the prevailing party the appellate costs—including preparation costs for the clerk's record and the reporter's record—that were incurred by that party. But the court of appeals may tax costs otherwise as required by law or for good cause."). We find no good cause to tax costs against the prevailing party.