PATTERSON v. McMICKLE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-302-CV

PHIL PATTERSON, INDEPENDENT APPELLANT

ADMINISTRATOR OF THE ESTATE

OF DANIEL MADISON MYRACLE,

DECEASED

V.

GARY McMICKLE, INDIVIDUALLY APPELLEES

AND D/B/A CREATIVE CAPITAL, INC.,

McMICKLE ASSOCIATES, INC.,

AND CREATIVE CAPITAL, INC.

------------

FROM COUNTY COURT AT LAW NO. 1 OF WICHITA COUNTY

------------

OPINION

------------

I.  Introduction

This is a summary judgment appeal.  Appellant Phil Patterson (“Patterson”), Independent Administrator of the Estate of Daniel Madison Myracle (“Daniel”), Deceased, challenges the trial court’s granting of summary judgment in favor of Appellees Gary McMickle, Individually and d/b/a Creative Capital, Inc., McMickle Associates, Inc., and Creative Capital, Inc. (“McMickle”).  In a single issue, Patterson complains that the trial court erroneously granted McMickle’s motion for summary judgment because he produced evidence raising fact issues regarding the elements challenged by McMickle.  Because we hold that Patterson did not present controverting evidence raising a genuine issue of material fact, we will affirm.

II.  Factual and Procedural Background

In 1994, Sharnae Myracle (“Sharnae”), Daniel’s mother, retained Mark Mueller to pursue a medical negligence claim against various defendants alleged to have provided substandard care during the birth of Daniel.   Mueller subsequently filed a lawsuit on behalf of Daniel in 1995 styled “D.M., a Minor, By and Through His Parent and Next Friend, S.M. v. Wichita General Service Corp., et al.”

During the pendency of the suit, Mueller moved to have a guardian ad litem appointed to represent Daniel’s interests because Mueller was concerned about issues relating to Daniel’s care and living conditions at home and Sharnae’s fiscal responsibility.  The trial court granted the motion and appointed Joe Steimel (“Steimel”), a licensed attorney, to serve as Daniel’s guardian ad litem.  Steimel met with Sharnae and Daniel at his office on two separate occasions—once to meet Daniel and Sharnae, to learn about the care Daniel required, and to discuss the suit, and a second time to discuss investigations performed by Child Protective Services into allegations of neglect, both physical and supervisory, involving Daniel. 

Anticipating a possible settlement, Mueller engaged the services of McMickle,  an annuity broker experienced in the business of structuring settlements.  McMickle had worked with Mueller on numerous other lawsuits.  McMickle averred in his affidavit that Mueller merely wanted him to run price quotes on particular annuities from different companies.  McMickle complied and completed a 200-page analysis of the various markets that were selling annuities.  McMickle also attended two mediations between the parties, the first in June 1999 and a second in August 1999. 

McMickle met with Sharnae at the June 1999 mediation to discuss in general financial issues related to the settlement of the suit, such as the process of settlement structures and rated age charts.  McMickle spoke with Steimel at the second mediation about general issues concerning settlement structures and rated age charts and briefly sometime thereafter about the quality of life markets. 

The parties ultimately reached a settlement in the amount of $5,050,000.  After attorneys’ fees and costs, Daniel received between $2,900,000 and $3,000,000.  Of that amount, one-third was placed in a Section 142 trust for Daniel’s benefit, and the remaining two-thirds was used to purchase two annuities.
(footnote: 1)  The first annuity provided for monthly payments of $7,679.85, guaranteed for ten years and then for the life of Daniel.
(footnote: 2)  The second annuity and final one-third of the amount Daniel recovered was used to purchase a deferred annuity that provided for monthly payments of $42,007.97 for the life of Daniel, beginning fifteen years after the settlement. 

The second, deferred, life-only annuity did not have a guaranteed refund of the premium.  Both Mueller and McMickle thought it was appropriate for the second annuity to be deferred for fifteen years without a guaranteed return of the premium.  Mueller considered that the monthly payments would be significantly higher because of the non-refund, that the payments would begin at a time when Sharnae’s support systems were declining, and that the deferred payments would provide an incentive to Sharnae to take care of Daniel and avoid certain personal  situations.  Mueller provided Steimel with a document summarizing the annuity benefits for Daniel.  The document indicated a guaranteed yield for the second annuity in an amount of $0.00.  The settlement agreement indicated that payments were to begin in November 2014 “(if Daniel Myracle is then living)” and thereafter each month “during the lifetime” of Daniel.

McMickle did not have any detailed discussions with Sharnae or Steimel about the second annuity at any point during the pendency of the suit. According to McMickle, it was his understanding based on past dealings with Mueller that all communications went through Mueller and that Mueller controlled the dissemination of information. 

The trial court held a settlement hearing on October 18, 1999.  At the hearing, Sharnae represented to the court that the settlement was in Daniel’s best interests, that the deferred nature of the payments was fair and equitable, that the purpose of the settlement was to take care of Daniel, not her, and that the payments were designed to maximize the benefits over Daniel’s lifetime. Sharnae testified that she understood “that some of these payments are deferred.  Some of them start immediately, but some of them are deferred over time that are payable only for Daniel’s life.”  Steimel represented to the court that he thought the settlement was in Daniel’s best interests and that he thought it was a “good settlement.”  The trial court approved the settlement and trust. 

Daniel died on October 30, 2000, one year after the settlement and fourteen years before the second annuity was to begin monthly payments. Daniel’s estate is not entitled to any payment or refund from the second annuity because it did not have a guaranteed return of premium. 

Patterson sued Mueller and McMickle on behalf of Daniel and his estate, alleging claims for negligence, breach of fiduciary duty, Deceptive Trade Practices Act (“DTPA”) violations, and fraud.  Patterson alleges, among other things, that McMickle misrepresented the settlement terms, failed to properly advise Daniel’s next friend of the terms of the structured settlement, and failed to adequately disclose information that Daniel’s next friend would have relied on in making a decision to approve the settlement’s terms.  Patterson did not sue Steimel. 

McMickle moved for summary judgment, arguing, among other things, that all allegations of improper acts and omissions by McMickle against Sharnae or Daniel’s estate were irrelevant because Steimel displaced Sharnae as Daniel’s legal representative when he was appointed Daniel’s ad litem and thus, McMickle owed no duty to Sharnae; that McMickle never made any type of representation that the deferred annuity had any guarantee of premium; and that collateral estoppel barred Patterson’s entire suit.  The trial court granted McMickle’s motion but did not state the grounds upon which the motion was granted.  McMickle later filed a motion to sever the claims against him, which the trial court granted.  Patterson subsequently filed a motion for new trial, which was overruled by operation of law.  This appeal followed.

III.  Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  
Tex. R. Civ. P.
 166a(c); 
Sw. Elec. Power Co. v. Grant, 
73 S.W.3d 211, 215 (Tex. 2002); 
City of Houston v. Clear Creek Basin Auth.
, 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.  
Sw. Elec. Power Co., 
73 S.W.3d at 215.

When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor.
  Valence Operating Co. v. Dorsett
, 164 S.W.3d 656, 661 (Tex. 2005).
  
Evidence that favors the movant’s position will not be considered unless it is uncontroverted.  
Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.
, 391 S.W.2d 41, 47 (Tex. 1965).

A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim.
  IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason
,
 
143 S.W.3d 794, 798 (Tex. 2004).
  Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant.  
Centeq Realty, Inc. v. Siegler
, 899 S.W.2d 195, 197 (Tex. 1995)
.

IV.  McMickle’s Summary Judgment

A.  Negligence and Breach of Fiduciary Duty Claims

As Patterson acknowledges, McMickle moved for summary judgment by attempting to negate the duty element of Patterson’s causes of action.
(footnote: 3) Patterson argues that the trial court erred by granting McMickle summary judgment because Patterson produced evidence raising a genuine issue of material fact as to the existence of a duty owed to Sharnae.  McMickle argues that he owed no duty to Sharnae because Steimel displaced her as Daniel’s personal representative once the trial court appointed Steimel as guardian ad litem.  McMickle maintains that, at most, he owed duties to Mueller and Steimel in their capacities as Daniel’s representatives. 

Rule 173 of the Texas Rules of Civil Procedure allows a trial court to appoint a guardian ad litem when a minor is represented by a next friend or guardian who appears to have an interest adverse to that of the minor.  
Tex. R. Civ. P.
 173.  The trial court must appoint a guardian ad litem if it determines that a conflict exists.  
Byrd v. Woodruff
, 891 S.W.2d 689, 704-05 (Tex. App.—Dallas 1994, writ dism’d by agr.).
  Once appointed, the guardian ad litem displaces the next friend and becomes the personal representative of the minor for the duration of the case or until such time as the trial court determines the conflict has been removed.  
Delcourt v. Silverman
, 919 S.W.2d 777, 784 (Tex. App.—Houston [14th Dist.] 1996, writ denied), 
cert. denied,
 520 U.S. 1213 (1997); 
Byrd
, 891 S.W.2d at 705; 
see also Newman v. King
, 433 S.W.2d 420, 421 (Tex. 1968);
 Rodriguez v. Maxson
, No. 03-02-00047-CV, 2002 WL 31833553, at *2-3 (Tex. App.—Austin Dec. 19, 2002, pet. denied) (not designated for publication).  The appointment of a guardian ad litem and a settlement hearing are often necessary in compromising any suit involving a minor.  
Byrd
, 891 S.W.2d at 705.

McMickle produced summary judgment evidence that he was hired by Mueller as a structured settlement specialist.  He described himself as an expert witness brought in to analyze the life care plan that was developed, to help with negotiations, and to respond to requests for proposals.  McMickle averred in his affidavit that Mueller merely wanted him to run price quotes on particular annuities from different companies.  Mueller moved to have a guardian ad litem appointed to represent Daniel’s interests pursuant to Rule 173.  Once appointed, Steimel displaced Sharnae and became Daniel’s personal representative.  The trial court did not discontinue Steimel’s role as Daniel’s guardian ad litem before the parties settled.

Assuming without deciding that McMickle—a structured settlement expert hired by Mueller to run price quotes on various annuities—owed a duty, any duty owed would be to Mueller and possibly Steimel, Daniel’s representative, and not to Sharnae, a party determined by the trial court to appear to have an interest adverse to that of Daniel.  
See 
Tex. R. Civ. P.
 173.  While such a duty might be owed to Sharnae by Mueller because Mueller was representing Daniel through Sharnae, as Daniel’s next friend, it would be incongruous for us to hold that McMickle simultaneously owed a duty to Daniel’s personal representative and to a party who had an apparent conflict of interest with Daniel.  Such a holding would effectively render Steimel’s appointment pursuant to Rule 173 meaningless.  We hold that McMickle produced summary judgment proof conclusively negating the duty element of Patterson’s negligence and breach of fiduciary duty claims as a matter of law.  
See 
Mason
,
 
143 S.W.3d at 798.  Consequently, it was incumbent upon Patterson to come forward with competent controverting evidence raising a genuine issue of material fact on the issue of McMickle’s alleged duty to Sharnae.  
See Siegler
, 899 S.W.2d at 197.
 

Patterson argues that Steimel did not displace Sharnae as Daniel’s personal representative because there was no conflict of interest between Sharnae and Daniel.  He contends that Mueller sought the appointment of a guardian ad litem because there was evidence that Sharnae abused and neglected Daniel but that Mueller made no such showing to the trial court. Patterson points to summary judgment evidence of CPS records indicating that the claims of neglect were unsubstantiated.  Even if the claims of neglect were unsubstantiated, the propriety of the trial court’s decision to appoint a guardian ad litem is not at issue here, and Patterson may not show that McMickle owed Sharnae a duty by collaterally attacking the trial court’s decision to appoint Steimel as Daniel’s guardian ad litem.

Patterson also argues that Sharnae was the one who hired Mueller and that the contingency fee agreement with Mueller identified her as Daniel’s next friend.  This evidence, however, fails to take into account the appointment of Steimel as Daniel’s guardian ad litem, as discussed above.

Patterson finally argues that McMickle admitted that he owed a duty to Steimel and that a fact issue exists regarding the duty owed to “Daniel’s representative.”  Patterson refers us to a statement made by McMickle in his deposition testimony in which McMickle stated that he had a duty to do the best job he could in educating the parties that needed to be educated about structured settlements.  However, Patterson’s relevant allegations of negligence and breach of fiduciary duty all relate to acts or omissions by McMickle with regard to Daniel’s next friend, Sharnae, not Steimel.
(footnote: 4)  
Patterson thus failed to meet his burden to produce evidence raising a genuine issue of material fact.  Accordingly, the trial court properly granted McMickle’s motion for summary judgment on Patterson’s negligence and breach of fiduciary claims.

B.  Fraud, Fraudulent and Negligent Misrepresentation, and DTPA Claims

Patterson argues that McMickle was not entitled to summary judgment because he raised a fact issue as to whether McMickle failed to disclose facts and information to Sharnae and Steimel when he had a duty to do so.  McMickle argues that he was entitled to summary judgment because he did not have a duty to Sharnae and because he never made any representation to anyone that the deferred annuity had a guarantee of premium.

The failure to disclose information does not constitute fraud in the absence of a duty to disclose.  
Bradford v. Vento
, 48 S.W.3d 749, 755 (Tex. 2001).  
In support of his argument that McMickle had a duty to disclose information to Sharnae, Patterson argues that “[f]iduciaries owe their clients the duty of loyalty and utmost good faith, the duty of candor, the duty to act with integrity, and the duty to fully disclose all material facts.” 
 But 
w
e have determined above that McMickle 
conclusively negated the duty element of Patterson’s breach of fiduciary duty claim as a matter of law 
because Sharnae was displaced as Daniel’s representative
; without a duty to disclose information to Sharnae, McMickle was entitled to summary judgment on Patterson’s fraud claims as a matter of law.

Patterson points to summary judgment evidence that McMickle had only one, general conversation with Sharnae about settlement structures and that McMickle did not discuss the annuities in detail with Sharnae or Steimel in his attempt to put on controverting evidence raising a fact issue. 
 
However,
 the evidence set forth by Patterson goes to whether McMickle breached a duty, not to the existence of a duty, and, again, Patterson’s allegations in his petition relate to acts or omissions by McMickle with Daniel’s next friend, Sharnae, not Steimel.
(footnote: 5)
 To the extent Patterson argues that McMickle made false representations to Sharnae with the intent to induce her to enter into the settlement agreement, we note that
 
a cause of action for fraud and fraudulent misrepresentation both require proof of a false representation, and a negligent misrepresentation claim requires proof that the defendant has provided false information.  
Fed. Land Bank Ass’n of Tyler v. Sloane,
 825 S.W.2d 439, 442 (Tex. 1991); 
Malone v. Sewell
, 168 S.W.3d 243, 252 (Tex. App.—Fort Worth 2005, pet. denied); 
Baribeau v. Gustafson
, 107 S.W.3d 52, 58 (Tex. App.—San Antonio 2003, pet. denied).
  
McMickle produced evidence showing that he had prepared a “Schedule of Annuity Benefits” stating that the deferred annuity had a guaranteed yield of zero and that he had never made any representation that the deferred annuity had or should have had a guarantee of premium or payment.  Patterson did not produce controverting evidence that McMickle made any representation that the deferred annuity had a guarantee of premium
.

Patterson also briefly argues that he raised a fact issue as to whether McMickle failed to disclose information about the settlement structure and annuities to Sharnae and Steimel in violation of Section 17.46(b)(24) of the DTPA.  
See 
Tex. Bus. & Com. Code Ann.
 § 17.46(b)(24) (Vernon Supp. 2005).  To prevail on a claim for failure to disclose under the DTPA, Patterson must prove (1) the defendant knew information regarding the goods or services, (2) the information was not disclosed, (3) there was an intent to induce the consumer to enter into the transaction through the failure to disclose, and (4) the consumer would not have entered into the transaction had the information been disclosed.  
Id
.; 
Gill v. Boyd Distrib. Ctr
., 64 S.W.3d 601, 604 (Tex. App.—Texarkana 2001, pet. denied)
.  Mere nondisclosure of material information is not enough to establish an actionable DTPA claim.  
Head v. U.S. Inspect DFW, Inc.
, 159 S.W.3d 731, 744 (Tex. App.—Fort Worth 2005, no pet.); 
Century 21 Real Estate Corp. v. Hometown Real Estate Co.
, 890 S.W.2d 118, 126 (Tex. App.—Texarkana 1994, writ denied).  The plaintiff must also show that the information was withheld with the intent of inducing the consumer to engage in a transaction.  
Willowbrook Foods, Inc. v. Grinnell Corp.
, 147 S.W.3d 492, 507 (Tex. App.—San Antonio 2004, pet. filed).

Patterson directs us to summary judgment evidence that McMickle had one limited conversation with Sharnae, that McMickle had no further conversations with Sharnae regarding the annuities thereafter, and that McMickle was “well aware of Mueller’s dislike for Sharnae.”  Assuming that the “transaction” here was Sharnae’s entering into the settlement agreement, Patterson produced no evidence that McMickle withheld information with the intent to induce her into the agreement.  Patterson’s mere allegation of McMickle’s failure to disclose information is insufficient.  Thus, 
we hold that Patterson failed to produce competent controverting evidence raising a genuine issue of material fact as to his fraud, fraudulent and negligent misrepresentation, and DTPA claims.  
The trial court properly granted McMickle’s motion for summary judgment on Patterson’s fraud, fraudulent and negligent misrepresentation, and DTPA claims.  Accordingly, for these reasons, we overrule Patterson’s sole issue.

V.  Conclusion

Having overruled Patterson’s issue, we affirm the trial court’s judgment.
  

DIXON W. HOLMAN

JUSTICE

PANEL A:  CAYCE, C.J.; LIVINGSTON and HOLMAN, JJ.

DELIVERED: April 6, 2006

FOOTNOTES
1:
Section 142 of the Texas Property Code provides, “In a suit in which a minor or incapacitated person who has no legal guardian is represented by a next friend or an appointed guardian ad litem, the court, on application and hearing, may provide by decree for the investment of funds accruing to the minor or other person under the judgment in the suit.”  
Tex. Prop. Code Ann
.
 § 142.001(
a
) (
Vernon
 
Supp. 2005
).
  The trust, which is sometimes referred to as a special needs trust in portions of the record, was apparently created to manage funds from an earlier partial settlement of the same suit.

2:
According to the record, this meant that the annuity would pay for at least ten years and then for as long as Daniel lived thereafter.

3:
The existence of a fiduciary relationship is an element of a breach of fiduciary duty claim, 
Punts v. Wilson,
 137 S.W.3d 889, 891 (Tex. App.—Texarkana 2004, no pet.)
, and a legal duty is an element of a claim for professional malpractice based in negligence, 
Deloitte & Touche v. Weller
, 976 S.W.2d 212, 215 (Tex. App.—Amarillo 1998, pet. denied) (op. on reh’g), 
cert. denied
, 526 U.S. 1117 (1999).  

4:
Patterson alleged that McMickle was negligent by “failing to require that the annuities purchased have some guarantee of payments that would ensure the recovery of the present value of the annuity as represented to 
Daniel’s next friend
” and by “failing to properly advise 
Daniel’s next friend 
as to the terms of the structured settlement.” [Emphasis added.]  Patterson also alleged that McMickle breached a fiduciary duty owed to 
Daniel’s next friend
.  Sharnae was Daniel’s next friend, not Steimel.  Patterson does, however, allege that McMickle failed to adequately protect Daniel’s interests in procuring a recovery on Daniel’s behalf, but that was Mueller’s responsibility, not McMickle’s.

5:
Patterson alleged in his petition that McMickle “made material representations regarding the annuities purchased with funds from the settlement agreed to by 
Daniel’s next friend
, which was false and made with the intention of inducing 
Daniel’s next friend 
to enter the settlement”; that McMickle “was aware that such representations were false when made and intended for 
Daniel’s next friend 
to rely upon them”; and that “
Daniel’s next friend 
did rely on” McMickle’s representations. [Emphasis added.]  Patterson’s DTPA claim, discussed 
infra
, similarly alleges acts or omissions by McMickle towards Daniel’s next friend, not Steimel.