# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-22-00059-CV

### Levi Pate and Nicole Pate, Appellants

### v.

### Fun Town RV San Angelo, LP, Appellee

---

### FROM THE 391ST DISTRICT COURT OF TOM GREEN COUNTY
### NO. D180534C, THE HONORABLE BRAD GOODWIN, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellants Levi and Nicole Pate (the Pates) appeal the trial court's take-nothing summary-judgment in favor of Fun Town RV San Angelo, LP (Fun Town) on the Pates' claims for violations of the Deceptive Trade Practices Act (DTPA) arising from their purchase of a travel trailer. In their first six issues the Pates argue that the trial court erred in granting Fun Town's hybrid summary-judgment motion concerning their DTPA claims for failure to disclose and misrepresentation, breach of warranty, and unconscionable actions. The Pates next argue that the trial court erred in granting summary judgment on their "claims" for revocation, rescission, or restoration based on Fun Town's disclaimer of warranties and because the Pates seasonally revoked acceptance of the travel trailer. Finally, the Pates argue that Fun Town cannot prove that the Pates failed to offer to return any benefit that they derived from the travel trailer. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Levi Pate testified by deposition that he purchased a 2017 Vengeance travel trailer from the Fun Town dealership in San Angelo in June 2017. Levi testified by deposition that he was familiar with travel trailers because he previously owned other recreational vehicles. He stated that he spoke on the telephone with Fun Town sales staff about different inventory that was available before he visited Fun Town in person. Levi testified that his first visit to Fun Town lasted approximately two hours. Levi further testified that, during this visit, he and his family spent about thirty minutes in the travel trailer they ultimately purchased, and "everything looked great in the travel trailer."

Levi testified by deposition that during his second visit, Fun Town representatives once again walked through the travel trailer with him and also answered all of his questions about the travel trailer before he took possession of it.[1] Levi testified that during the fifteen-minute walk-through, "[e]verything was opened up, all the slide-outs were opened and electricity was turned on." Levi stated that the Fun Town representatives "walked through [and] showed me everything—how to use everything," and went through the features of a fifth wheel. During his deposition, Levi agreed that he was able to complete the walk-through of the travel trailer before he purchased it.[2] Levi also testified that he signed a pre-delivery inspection checklist that reflected that he completely inspected the unit and that items in the travel trailer were working properly at the time of purchase. Levi testified that before he took possession of the travel trailer, Fun Town changed the hitch on the travel trailer to pair with the hitch on Levi's new truck.

---

[1] Levi testified that his wife Nicole was not present during his second visit to Fun Town. Levi signed Nicole's name to the purchase paperwork for the travel trailer during the second visit.

[2] During his deposition, Levi was asked if he "had an opportunity to work the slide-outs" of the travel trailer during the walk-through on the day of purchase. He responded, "I don't recall," but acknowledged "I could have" worked the slide-outs if he chose to.

Levi stated that after he brought the travel trailer home, he noticed that the linoleum floor of the travel trailer was torn from the slide-out.[3] Levi testified that shortly after the purchase in June 2017, he took the travel trailer on a ten-day vacation to Colorado without performing any repairs on it. After the Pates returned from their vacation, Levi brought the travel trailer into Fun Town for the first service appointment available, which was at the end of August, and left the travel trailer at Fun Town. Hector Martinez, the General Manager for the Fun Town dealership in San Angelo, testified by deposition that, pursuant to Fun Town's policy, the Pates could have continued to use their travel trailer instead of leaving it at Fun Town for several months while the service department ordered the parts necessary to complete the repair. In January 2018, Fun Town's service department moved the travel trailer from San Angelo to its Cleburne dealership to complete the repair. Fun Town repaired the travel trailer at no cost to the Pates.

In February 2018, while the travel trailer was at the Cleburne dealership, the Pates' attorney sent Fun Town a DTPA demand letter notifying Fun Town of claims for violations of various provisions of the DTPA and demanding actual damages, attorney's fees, and that Fun Town take back the travel trailer, rescind the sale, and refund the Pates' expenses. The Pates' attorney also acknowledged in the DTPA letter that, "[o]n June 20, 2017, the Pates drove to San Angelo, signed the papers, and went through the walk through on the travel trailer. At that time everything worked. The linoleum was fine . . . ."[4]

---

[3] The Pates do not allege how many times they operated the slide-out after they purchased the travel trailer before the linoleum tore. In their summary-judgment response, the Pates assert that the slide-out ripped the linoleum sometime after they took possession of the travel trailer, and they called Fun Town the following morning.

[4] Although the dissent implies that we took this language from the Pates' DTPA demand letter out of context, the DTPA demand letter was drafted by an attorney, the words are unambiguous, and we apply their plain meaning.

3

Levi testified by deposition that he did not inspect the repairs that Fun Town performed on the travel trailer before his attorney sent the DTPA demand letter to Fun Town. Levi also testified that when he went to the Cleburne dealership to inspect the travel trailer in April 2018, the slide-out worked. Levi stated that he left the travel trailer at the Cleburne dealership in April 2018 and would not have taken possession of the travel trailer even if it was repaired.

Martinez testified by deposition that Fun Town repaired the linoleum floor on the travel trailer before the Pates purchased the unit. Martinez testified that Fun Town was not deceptive towards the Pates because Fun Town "fixed the linoleum" and "there's not a need to disclose every little thing" "that can be fixed" such as tightening a loose plumbing fixture. Martinez "didn't know what ripped" the linoleum floor before the sale because a few different things can cause such a rip. He testified that "maybe a nail or a rock or something like that . . . had gotten under the slide," because "[w]hen these things are moving down the road . . . they shift [and] adjust."[5] Martinez testified by deposition that after Fun Town "fixed the linoleum" and "operated the slides in and out a few different times, it didn't rip." For this reason, Martinez "did not feel that it was the slides" that caused the pre-sale rip and instead believed that "a rock or a nail or something like that could have caused it."

Martinez testified that the length of time it takes Fun Town's service department to complete a repair depends upon how long it takes to obtain the necessary materials and the number of units already in the service department. To cut down on the amount of time that a unit is in the service department waiting for repairs, Martinez testified that the service department encourages customers to use their travel trailers while parts are ordered, such as when Fun Town ordered

_____

[5] Martinez testified that these things happen to trailers when "[y]ou have a house of moving parts going down the road."

4

linoleum for the Pates' unit. He stated that most customers use their travel trailer until Fun Town gets the part in. Finally, Martinez testified that a customer is not required to have their travel trailer serviced by Fun Town or the specific Fun Town dealership they purchased from.

Martinez testified that when the Pates brought their travel trailer into Fun Town in August 2017, the service department notified the manufacturer that warrantied the unit of the linoleum tear, and the manufacturer recommended the steps that the service department should take to fix it. Martinez stated that "it wasn't necessarily a rock" that tore the linoleum floor after the Pates' purchase, but there could have been an off-adjustment with the slide-out. Martinez testified that the manufacturer ultimately suggested adding an additional roller to the slide-out, and the service department complied. Martinez testified by deposition that he "do[es]n't think [the slide-out] was defective," and he "ha[s]n't h6eard of any other of these trailers needing a roller in it."

Martinez attests in an affidavit that Fun Town repaired the linoleum floor before the travel trailer was sold to the Pates and the slide-out worked properly at the time of purchase. Martinez further attests that during the make-ready, the slide-out was tested and it did not tear the linoleum floor when it extended and retracted. Martinez also attests that a Fun Town representative and the Pates walked through the travel trailer before and after the purchase to go over its features, which included testing and operating the slide-outs.

Martinez further attests in his affidavit that Fun Town told the Pates that they could use their travel trailer any time while it was at Fun Town getting repaired. Martinez avers that the linoleum floor tear did not prevent the Pates from using the travel trailer because the slide-out still worked. Martinez attests that he personally inspected the travel trailer after the linoleum floor and slide-out repair, and the slide-out works properly. Martinez also attests that the travel trailer is no

5

less valuable due to any repair that Fun Town completed; however, the Pates refuse to take possession of the travel trailer despite it being repaired at no cost to the Pates.

In April 2018, the Pates filed a lawsuit against Fun Town asserting causes of action under the DTPA for failure to disclose, misrepresentation, unconscionable conduct, and breach of warranty. The Pates state in their petition that the travel trailer was defectively made. The Pates allege that Fun Town misrepresented that the travel trailer was in perfect condition and that Fun Town "had the best service department in the Big Country." The Pates also assert that Fun Town failed to disclose that it repaired the linoleum before the purchase. The Pates contend that Fun Town breached the implied warranty of merchantability and engaged in unconscionable conduct. The Pates assert that they purchased a travel trailer for $70,172.04 that has a fair market value of zero, and they sought as damages restoration of the purchase price of the travel trailer plus all payments made on the note, insurance and travel costs, and loss of use. The Pates also requested revocation of acceptance and rejection of the transaction.

Fun Town filed a hybrid motion for summary judgment arguing that there was no evidence to support the Pates' DTPA misrepresentation and failure-to-disclose claims because there was no evidence of any pre-sale misrepresentation. Moreover, because it was undisputed that the slide-out functioned properly at the time of purchase, Fun Town had no knowledge of a defect and no duty to disclose. Fun Town also argued that there was no evidence to support a breach-of-warranty claim because the Pates signed paperwork stating that they inspected the travel trailer to their satisfaction and the Pates disclaimed all warranties when they signed the purchase agreement and dealer warranty disclaimer. Fun Town maintained that there was no evidence to support an allegation that its actions were unconscionable for the same reasons that the Pates' other DTPA claims failed. Finally, Fun Town asserted that restoration of remedy damages was not

6

available to the Pates because they failed to seasonably reject the travel trailer, they disclaimed all warranties, and they did not offer to return the benefit they received from the travel trailer. Evidence that Fun Town attached to its summary-judgment motion included: (1) the Pates' DTPA demand letter; (2) Martinez's affidavit; (3) the purchase agreement for the travel trailer, signed by the Pates; (4) the manufacturer's customer delivery and warranty registration form, signed by the Pates; (5) Fun Town's dealer warranty disclaimer signed by the Pates; (6) the pre-delivery inspection checklist signed by the Pates, (7) excerpts of Levi Pate's deposition testimony; and (8) excerpts of Nicole Pate's deposition testimony.

The Pates responded to Fun Town's hybrid motion for summary judgment and attached evidence that included excerpts of Fun Town corporate representative Hector Martinez's deposition and the affidavit testimony of Levi Pate. In December 2021 the trial court signed a final judgment granting Fun Town's traditional and no-evidence motions for summary judgment.

**ANALYSIS**

After an adequate time for discovery has passed, a party may move for a no-evidence summary judgment on the ground that there is no evidence to support an essential element of a claim on which the non-movant bears the burden at trial. *See* Tex. R. Civ. P. 166a(i); *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008). To defeat a no-evidence motion for summary judgment, the non-movant must produce more than a scintilla of evidence to raise a genuine issue of material fact on the challenged element. *See* Tex. R. Civ. P. 166a(i); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Forbes Inc. v. Granada Bioscis., Inc.*, 124 S.W.3d 167, 172 (Tex. 2003) (quoting *King Ranch*

7

*v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003)).  More than a scintilla of evidence exists if the evidence would permit reasonable and fair-minded people to differ in their conclusions.  *Id.*

A party moving for traditional summary judgment bears the burden of showing that no genuine issue of material fact exists and it is entitled to judgment as a matter of law.  *See* Tex. R. Civ. P. 166a(c); *Nassar v. Liberty Mut. Fire Ins.*, 508 S.W.3d 254, 257 (Tex. 2017) (per curiam). An issue is established conclusively if reasonable minds could not differ about the conclusion to be drawn from the facts in the record.  *Community Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017).  "If the movant carries this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment."  *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018).  A defendant who moves for traditional summary judgment on the plaintiff's claims must conclusively disprove at least one element of each of the plaintiff's causes of action.  *Little v. Texas Dep't of Crim. Just.*, 148 S.W.3d 374, 381 (Tex. 2004).

We review a trial court's summary judgment de novo.  *Lujan*, 555 S.W.3d at 84. Under either a no-evidence or traditional motion, we consider the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor.  *See Zive v. Sandberg*, 644 S.W.3d 169, 173 (Tex. 2022); *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006) (per curiam) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005)).  Where the trial court does not state the basis on which it granted summary judgment, we must affirm if any of the grounds asserted in the summary-judgment motion are meritorious.  *Hansen*, 525 S.W.3d at 680.  In reviewing a summary judgment, we consider all grounds presented to the trial court and preserved on appeal in the interest of judicial economy. *Cincinnati Life Ins. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996).  Though we typically address a no-evidence summary-judgment motion before a traditional summary-judgment motion,

*see Ridgway*, 135 S.W.3d at 600, we can address the traditional motion first when it is dispositive. *See D.R. Horton-Tex., Ltd. v. Savannah Props. Assocs.*, 416 S.W.3d 217, 225 n.7 (Tex. App.—Fort Worth 2013, no pet.)

The DTPA prohibits "false, misleading, or deceptive acts or practices." Tex. Bus. & Com. Code § 17.46(a). The Pates have alleged such acts to include "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities which they do not have" and "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." *Id.* § 17.46(b)(5), (7). The term "transaction" as used in the DTPA contemplates an act where an alteration of legal rights occurs. *Head v. U.S. Inspect DFW, Inc.*, 159 S.W.3d 731, 744 (Tex. App.—Fort Worth 2005, no pet.). The transaction in this instance occurred when the Pates purchased the travel trailer. *See id.*

The Pates first argue that the trial court erred in granting Fun Town's summary-judgment motion on their claims alleging violations of the DTPA for failure to disclose and misrepresentation. *See* Tex. Bus. & Com. Code § 17.46(b)(5), (7), (24). The Pates' claims are based on Fun Town's purported failure to disclose a defect, misrepresentation of the standard of the travel trailer, and misrepresentation that Fun Town had the "best service department in the Big Country." Specifically, the Pates contend that (a) the slide-out tore the linoleum of the travel trailer prior to their purchase, (b) Fun Town repaired the linoleum but did not inspect or repair the slide-out because Fun Town guessed that a nail or small rock had gotten under the slide-out; and (c) if the Pates had been informed of this event and no attempt to repair the slide-out, they would not have bought the travel trailer.

9

There is no evidence in the record that Fun Town made false statements about the travel-trailer's "sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities" at the time of purchase. *Id*. § 17.46(b)(5). There is also no evidence that Fun Town made false representations about the standard, quality, grade, style, or model of the travel trailer. *Id*. § 17.46(b)(7). Levi testified by deposition that during his first visit to Fun Town, he remembered Fun Town representatives discussing with him "[j]ust the different types of trailers and convenience for the significance of fitting our family in the trailer." Levi testified that he otherwise did not necessarily remember any specific discussions that he had with Fun Town sales representatives regarding the travel trailer on his first visit. Levi further testified that during his second visit, Fun Town representatives conducted a fifteen-minute walk-through that included going through the systems of the travel trailer. During the walk-through, a Fun Town representative "showed [Levi] everything—how to use everything" on the travel trailer. After the walk-through, the Pates signed documents stating that their questions about the travel trailer were answered and that they tested its features and systems before they completed the purchase. Levi testified that he did not recall any specific discussions he had with any Fun Town representative during the second visit, aside from getting approval to sign his wife's signature on the purchase paperwork. Nicole testified by deposition that during her first and only visit to Fun Town, she remembered touring the travel trailer and negotiating price in the sales office. She stated that she had no additional discussions with Fun Town staff that were not discussed in her deposition. Neither of the Pates produced evidence of Fun Town statements or representations that were false. The record contains no evidence raising a genuine issue of material fact as to whether Fun Town made false statements or misrepresentations under the DTPA. *See id.* § 17.46(b)(5), (7); Tex. R. Civ. P. 166a(i).

The Pates also allege that Fun Town violated the DTPA by "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed." *See* Tex. Bus. & Com. Code § 17.46(b)(24). To prevail on a claim for failure to disclose under the DTPA, the Pates must prove that (1) Fun Town failed to disclose material information concerning goods or services; (2) the undisclosed information was known at the time of purchase; (3) Fun Town intended to induce the Pates to enter into the transaction through the failure to disclose; and (4) the Pates would not have entered into the transaction had the information been disclosed. *See id.*; *Patterson v. McMickle*, 191 S.W.3d 819, 827 (Tex. App.—Fort Worth 2006, no pet.) (citing *Gill v. Boyd Distrib. Ctr.*, 64 S.W.3d 601, 604 (Tex. App.—Texarkana 2001, pet. denied)). Mere nondisclosure of material information does not establish an actionable DTPA claim. *Patterson*, 191 S.W.3d at 827; *Head*, 159 S.W.3d at 744. "Nondisclosure without evidence that a defendant had knowledge of the undisclosed information and intentionally withheld the information is insufficient to establish a violation of the DTPA." *Willowbrook Foods, Inc. v. Grinnell Corp.*, 147 S.W.3d 492, 506 (Tex. App.—San Antonio 2004, pet. denied). In addition, the known information must be withheld for the purpose of inducing the consumer to enter into the transaction. *See Doe v. Boys Club of Greater Dall. Inc.*, 907 S.W.2d 472, 480 (Tex. 1995).

The summary-judgment record establishes that Fun Town did not "fail to disclose information . . . that was known at the time of the transaction" intending to induce the Pates to enter into the transaction. *See* Tex. Bus. & Com. Code § 17.46(b)(24). It is undisputed that when the Pates purchased the travel trailer the slide-out worked. Martinez testified that after the make-ready was completed, Fun Town tested the slide-out to ensure that it worked properly. He

11

attests that, at the time of purchase, the slide-out did not tear the linoleum floor when it extended and retracted. Martinez further attests that a Fun Town representative walked Levi through the travel trailer and operated the slide-outs before and after the purchase. Levi likewise testified by deposition that before he purchased the travel trailer, Fun Town representatives answered all of his questions and conducted a walk-through where "[e]verything was opened up, all the slide-outs were opened and electricity was turned on." The Pates pleaded that the travel trailer had no apparent defects at the time of purchase. The Pates' DTPA demand letter states that at the time of purchase "everything worked" on the travel trailer and "[t]he linoleum was fine."[6]

Levi also testified by deposition that he signed a pre-delivery inspection checklist at the time of purchase, where he acknowledged the following:

> I CERTIFY THAT THE UNIT DESCRIBED ABOVE WAS DELIVERED TO ME ON THIS DATE 6/20 AND THAT THE DEALER EXPLAINED OR DEMONSTRATED ALL APPLICABLE ITEMS LISTED TO MY SATISFACTION. I FURTHER CERTIFY THAT I HAVE COMPLETELY AND FULLY INSPECTED THIS UNIT AND HAVE FOUND NO DEFECTS IN MATERIAL AND OR WORKMANSHIP OTHER THAN WHAT MIGHT BE LISTED ABOVE AND I ACCEPT THIS UNIT WITH COMPLETE SATISFACTION.

This pre-delivery inspection checklist reflected that the interior, exterior, and floor of the travel trailer were inspected. Levi also testified by deposition that he signed the manufacturer's customer delivery and warranty registration form that acknowledged he "observed and received satisfactory explanations to all questions regarding the items listed during the delivery process." The manufacturer's customer delivery and warranty registration form also stated that Levi inspected

---

[6] The DTPA demand letter recites that the Pates took a photograph of the tear in the linoleum that occurred after the purchase. However, the record does not contain a photograph or description of the tear that occurred before or after the purchase of the travel trailer. The Pates do not allege and do not provide or point to evidence that that the pre-sale tear in the linoleum was similar in location and size to the tear that occurred after the purchase of the travel trailer.

12

the travel trailer to his satisfaction and was offered a test drive at the time of purchase. Levi testified that he was provided the opportunity to make notations on the form if he was not happy with any feature of the travel trailer, but he did not do so because "[n]othing seemed wrong."

Critically, the Pates do not allege that Fun Town inspected the slide-out and had material knowledge of an alleged defect before the sale. In their summary-judgment response, the Pates assert that the evidence is undisputed that Fun Town did not inspect or repair the slide-out before the purchase because Fun Town believed that a small rock or nail caused the linoleum tear. The Pates also acknowledge in their brief that the summary-judgment evidence demonstrates that Fun Town believed the pre-sale linoleum tear was caused when a rock or nail traveled into the slide during transit and that the repair was simple. The Pates argue that this belief is why Fun Town did not inspect or repair the slide-out when it repaired the linoleum pre-sale. *See Boys Clubs of Greater Dall.*, 907 S.W.2d at 479 (explaining that defendant has no duty to disclose material facts it should have known but does not). The evidence thus fails to create a fact issue concerning whether Fun Town knew of a defect and intentionally withheld information with the intent to induce the Pates to purchase the travel trailer. *See Robinson v. Preston Chrysler-Plymouth, Inc.*, 633 S.W.2d 500, 502 (Tex. 1982) (instructing that non-disclosure is not actionable without evidence defendant had knowledge of undisclosed information and intentionally withheld it).

The Pates also contend that Fun Town's assertion that the dealership had the "best service department in the Big Country" was a misrepresentation under the DTPA. To be actionable under the DTPA, a misrepresentation must concern a material fact and not be merely puffing or opinion. *Pennington v. Singleton*, 606 S.W.2d 682, 687 (Tex. 1980). Broad statements comparing one's goods with others or labeling service "good" or "superb" without more "amounts to mere sales talk, or puffery, not a statement of material fact." *GJP, Inc. v. Ghosh*, 251 S.W.3d 854, 889

13

(Tex. App.—Austin 2008, no pet.). A statement that Fun Town had the "best service department in the Big Country" is a broad, vague statement of opinion and not a representation of material fact under the DTPA. *See id.*

Because none of the evidence relied upon by the Pates concerned a misrepresentation or false statement of material fact under the DTPA, the trial court did not err when it granted Fun Town's no-evidence motion for summary judgment on this claim. *See* Tex. R. Civ. P. 166a(i). Because the summary-judgment evidence also shows the absence of a genuine issue of material fact and that Fun Town did not violate the DTPA by failing to disclose a material fact, the trial court did not err when it rendered traditional summary judgment in favor of Fun Town on these claims. *See* Tex. R. Civ. P. 166a(c); *Ridgway*, 135 S.W.3d at 600. We overrule the Pates' first two issues.

Before moving to the Pates' third issue, we pause to address the dissenting opinion. To conclude that the Pates produced evidence sufficient to create fact issues on their DTPA claims for failure to disclose and unconscionable conduct, the dissent misinterprets the evidence and misapplies the standard for summary-judgment review. The dissent proposes that the Pates' summary-judgment evidence creates a reasonable inference that "Fun Town knew what the real problem was and simply patched the linoleum to hurry the sale along," and that Fun Town left the slide-out in the open position and did not operate it during the walk-through to conceal the

14

underlying problem at the time of purchase.[7]  The dissent asserts that the following stacked inferences created a fact issue precluding summary judgment:[8]

- The slide-out caused the linoleum tear during the make ready, and Fun Town knew this.

- Although Fun Town actually knew what the real problem was with the travel trailer, it simply patched the linoleum during the make-ready to hurry the sale along.

- Fun Town orchestrated the events on the day of purchase to hide the defect from the Pates by leaving the slide-out in the open position and not operating the slide-out during the walk-through.

- Fun Town failed to disclose the defect to the Pates at the time of purchase and acted to hide the defect from the Pates in order to induce them into the sale of the travel trailer.

But the dissent ignores evidence from both parties that nullifies the proposed inferences:

- The DTPA demand letter, wherein the Pates' attorney states that "[a]t th[e] time [of purchase] everything worked.  The linoleum was fine . . ."

---

[7]  The dissent contends that, in analyzing traditional summary judgment, we should not consider evidence that Fun Town presented in support of its summary-judgment motion because the Pates do not challenge whether Fun Town carried its burden as a matter of law and only challenge whether they raised a fact issue in response.  We disagree.  First, the Pates do challenge whether Fun Town carried its burden.  The Pates argue on appeal that "Fun Town did not prove as a matter of law that [it] did not engage in false, misleading, or deceptive acts or practices."  The Pates further assert that "Fun Town fails to prove as a matter of law there is no genuine issue of material fact as to Fun Town's lack of knowledge."  Second, considering only the evidence that the Pates attached to their summary-judgment response would be a no-evidence summary judgment analysis rather than a traditional summary-judgment analysis.  *Compare* Tex. R. Civ. P. 166a(i) (placing burden on non-movant to produce evidence to resist no-evidence summary judgment) *with* Tex. R. Civ. P. 166a(c) (placing burden on movant to show no genuine issue of material fact in record).

[8]  Summary-judgment evidence fatally undermines these stacked inferences.  *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 755 (Tex. 2003) ("some suspicion linked to other suspicion produces only more suspicion, which is not the same as some evidence") (quoting *Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 927 (Tex. 1993)); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005) (instructing that although reviewing court examines summary-judgment record in light most favorable to nonmovant, "[reviewing courts do *not* disregard the evidence supporting the motion; if they did, all summary judgments would be reversed") (emphasis in original).

- Levi's sworn deposition testimony that (i) Fun Town serviced the travel trailer on the day of purchase by changing the hitch and (ii) he signed a customer delivery and warranty registration form reflecting that Fun Town offered him a test drive at the time of purchase.

- Martinez's sworn deposition testimony that (i) Fun Town was not deceptive towards the Pates because Fun Town fixed the linoleum pre-sale and tested the slide-out and it worked; and (ii) because of this Fun Town thought a rock or nail caused the linoleum tear.

- Levi's sworn deposition testimony that (i) "nothing seemed wrong" with the travel trailer on the day of delivery; (ii) although Levi does not recall if he personally operated the slide-out during his walk-through of the travel trailer on the day of delivery, he could have done so if he so chose; and (iii) he signed a pre-delivery inspection checklist at delivery acknowledging that he "completely and fully inspected this unit" and "found no defects in material or workmanship," including the floor.

This evidence—particularly that from the Pates—exposes the dissent's proposed stacked inferences as mere surmise or suspicion that is not cognizable summary-judgment evidence. *See First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) ("The evidence does not create an issue of material fact if it is 'so weak as to do no more than create a mere surmise or suspicion' that the fact exists.") (quoting *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014)).

The dissent argues that we improperly considered Martinez's sworn deposition testimony because Martinez's credibility could be a dispositive factor in the case. However, "[o]ur summary judgment rule permits the granting of a summary judgment on the basis of uncontroverted testimonial evidence of an interested witness if that evidence is clear, positive, and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." *Casso v. Brand*, 776 S.W.2d 551, 558 (Tex. 1989) (citing Tex. R. Civ. P. 166a(c)). In an affidavit attached to the Pates' summary-judgment response, the Pates' attorney attests that he took the deposition of Martinez and that Martinez made no changes to his deposition testimony. The Pates cite more than twenty pages of Martinez's deposition testimony in their

summary-judgment response. And the Pates credit Martinez's testimony that before the sale, Fun Town "repaired the linoleum" and did not "inspect or repair" the slide-out because Fun Town "guessed or assumed that it might have been a small rock or nail that caused the tear." Because the Pates did not object to Martinez's affidavit and deposition testimony as competent summary-judgment evidence under Rule 166a(c), we are free to consider the testimony. *See Wells Fargo Bank, N.A. v. Murphy*, 458 S.W.3d 912, 916 (Tex. 2015) ("A court of appeals commits reversible error when it sua sponte raises grounds to reverse a summary judgment that were not briefed or argued on appeal.").

Aside from the lack of evidence contradicting the judgment, the record does not support reversal because the Pates do not allege that Fun Town actively concealed a defect in the trailer at the time of purchase. *See* Tex. R. Civ. P. 166a(c) (providing that in reviewing summary judgment, "[i]ssues not expressly presented to the trial court by written motion, answer, or other response shall not be considered on appeal as grounds for reversal"); *see also* Tex. R. App. P. 33.1(a)(1) (mandating that to preserve complaint for appeal, record must demonstrate complaint was made to trial court). In their summary-judgment response, the Pates allege that, during the make-ready, Fun Town "simply repaired the linoleum without investigating, inspecting, or repairing the slide out, and took no action to determine the true nature of the problem." The Pates identify the following facts as "undisputed:"

- Fun Town repaired the linoleum before purchase, "but had not repaired or inspected the slide out" because Fun Town "guessed that maybe a nail or small rock had gotten under the slide."

17

- Because Fun Town "guessed or assumed" that a little rock or nail caused the tear, it "made no effort to inspect or repair the slide out prior to" purchase.[9]

The Pates fault Fun Town for "guessing" that a small rock or nail caused the rip and "hop[ing]" they fixed the trailer correctly. They do not allege that Fun Town actively concealed a defect in the trailer at the time of purchase. Because the Pates did not argue in the trial court that, before the purchase, Fun Town knew that the slide-out caused the linoleum to rip and intentionally hid this knowledge to induce the Pates into the sale, we cannot address the issue on appeal. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993) (instructing that motions and responses for summary judgment must stand or fall on grounds expressly presented to trial court).

The Pates did not allege in their petition or summary-judgment response, and no evidence in the record demonstrates, that Fun Town knew at the time of sale that the slide-out was defective and withheld this material information with the intent to induce the sale. *See* Tex. Bus. & Com. Code § 17.46(b)(24). For these reasons, the trial court did not err by granting Fun Town's motion for summary judgment on the Pates' DTPA claims for failure to disclose and misrepresentation. *See* Tex. R. Civ. P. 166a(i), (c).

In their third issue, the Pates argue that the trial court erred in granting summary judgment on their claim for breach of warranty.[10] "The DTPA does not create warranties; rather, they must be established independently of the act." *Elliot v. Kraft Foods N. Am., Inc.*, 118 S.W.3d 50, 56–57 (Tex. App.—Houston [14th Dist.] 2003, no pet.). To recover

---

[9] The Pates continue to argue in their opening brief that it is "undisputed that Fun Town did not repair or inspect the slide-out mechanism."

[10] The Pates do not specify the warranty that Fun Town allegedly breached or explain how Fun Town breached the unspecified warranty.

under the DTPA on a breach of warranty, a plaintiff must demonstrate (1) consumer status, (2) existence of the warranty, (3) breach of the warranty, and (4) that the breach caused injury. *Id.* at 55; *see Southwestern Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 576–77 (Tex. 1991) (holding breach of warranty claims are actionable under DTPA). If the seller is a merchant with respect to goods of that kind, the implied warranty of merchantability applies in a contract for goods unless it is excluded or modified. *See* Tex. Bus. & Com. Code § 2.314(a). To show a breach of the implied warranty of merchantability, a plaintiff must demonstrate that the goods were defective when they left the seller's possession and "were unfit for ordinary purposes for which they are used because of a lack of something necessary for adequacy." *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 444 (Tex. 1989). A product that performs its ordinary function adequately does not breach the implied warranty of merchantability simply because it does not function as well as the buyer would prefer or as well as it could. *General Motors Corp. v. Brewer*, 966 S.W.2d 56, 56 (Tex. 1998).

Fun Town asserted in its answer and summary-judgment motion that the Pates disclaimed all warranties from the dealership in the purchase of the travel trailer.[11] *See* Tex. Bus. & Com. Code § 2.316(b). A disclaimer of the implied warranty of fitness and implied warranty of merchantability must be conspicuous, and a disclaimer of the implied warranty of merchantability must mention the word "merchantability." *See id*. A printed heading in capital letters or text in the body of a form that is in larger or contrasting type is considered conspicuous. *See id.* § 1.201(10). Unless circumstances demonstrate otherwise, all implied warranties are excluded by language that in common understanding calls the buyer's attention to the exclusion of

---

[11] The Pates' travel trailer was covered by a one-year limited manufacturer's warranty. The Pates purchased an additional eighty-four months of warranty coverage through an independent third-party company.

19

warranties and makes it plain that there is no implied warranty. *See id.* § 2.316 (modifying or disclaiming UCC warranties in sale transactions).

The summary-judgment evidence establishes that the Pates disclaimed all warranties from Fun Town in the purchase of the travel trailer. The Pates signed multiple documents stating that Fun Town did not provide them with any warranties for the travel trailer. The purchase agreement signed by the Pates states in capital font and larger text that "THE DEALER HEREBY DISCLAIMS TO THE EXTENT PERMITTED UNDER APPLICABLE STATE LAW ALL WARRANTIES EXPRESSED OR IMPLIED INCLUDING ANY IMPLIED WARRANTY OF THE MERCHANTABILITY OF FITNESS FOR A PARTICULAR PURPOSE." The Pates also signed a document bearing the heading "DEALER WARRANTY DISCLAIMER" in bold capital letters that also states in bold: "[t]he only warranties applying to this vehicle are those offered by the manufacturer. The selling dealer disclaims all warranties, either expressed or implied, including all warranties of merchantability or fitness for a particular purpose . . . ." Hector Martinez, the General Manager for Fun Town, testified by affidavit that Fun Town does not manufacture the recreational vehicles that it sells to the public and Fun Town does not provide any warranties on recreational vehicles that it sells.

These exclusions of warranty are sufficiently conspicuous to effectively disclaim the implied warranties of merchantability and fitness in the sale of the travel trailer.[12] *See id.* § 2.316(b). Because the summary-judgment evidence conclusively disproves the Pates' DTPA claim for breach of warranty, we conclude that the trial court did not err when it granted

---

[12] The evidence reflects that the Pates used their travel trailer for its ordinary purpose when they took it on a ten-day trip to Colorado before it was repaired, and the Pates could have continued to use the travel trailer instead of leaving it with Fun Town while the service center waited to complete the repair. *See General Motors Corp. v. Brewer*, 966 S.W.2d 56, 56 (Tex. 1998).

20

Fun Town's traditional motion for summary judgment regarding this claim. *See* Tex. R. Civ. P. 166a(c). We overrule the Pates' third issue on appeal.

The Pates next argue that the trial court erred in granting summary judgment because there was evidence that Fun Town's actions were unconscionable. An unconscionable act under the DTPA is one that, "to a customer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code § 17.45(5). To prove an unconscionable action, the Pates must show that Fun Town took advantage of their lack of knowledge and that the resulting unfairness was "glaringly noticeable, flagrant, complete and unmitigated." *Chastain v. Koonce*, 700 S.W.2d 579, 583 (Tex. 1985).

The summary-judgment evidence conclusively proved that Fun Town did not take advantage of the Pates' lack of knowledge or experience to a grossly unfair degree. The Pates, who previously owned recreational vehicles, were not without choice in selecting another dealership to purchase a travel trailer from. *See Head*, 159 S.W.3d at 745 (concluding that trial court did not err in granting summary judgment on claim of unconscionable act when, among other factors, consumer had choice in selecting inspection company). For the same reasons that we conclude the record does not raise a genuine issue of material fact issue concerning the Pates' previously discussed claims, we conclude that the trial court did not err in granting summary judgment on the Pates' claim of an unconscionable act. Tex. R. Civ. P. 166a(c); *Bradford v. Vento*, 48 S.W.3d 749, 760 (Tex. 2001). We overrule the Pates' fifth issue.

Further, our conclusion that the summary judgment stands on traditional grounds means that we need not consider issues four and six, by which the Pates challenge the no-evidence summary judgment on its breach of warranty and unconscionable claims. *See* Tex. R. App. P. 47.1; *D.R. Horton-Tex., Ltd. v. Savannah Props. Assocs.*, 416 S.W.3d 217, 225 n.7 (Tex. App.—

21

Fort Worth 2013, no pet.) (addressing traditional motion for summary judgment first because it was dispositive). Finally, the Pates argue in issues seven and eight that the trial court erred in granting summary judgment on its requests for revocation, rescission, or restoration based on Fun Town's disclaimer of warranties or that they revoked their acceptance of the trailer within a reasonable time. Because the Pates have not shown that the trial court erred in granting Fun Town a summary judgment, the Pates have not shown that they are entitled to the remedies of revocation, rescission, or restoration. *See Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 825 (Tex. 2012) (instructing that DTPA restoration is available to prevailing consumer); *Leifester v. Dodge Country, Ltd.*, No. 03-06-00044-CV, 2007 WL 283019, at *3 (Tex. App.—Austin Feb. 1, 2007, no pet.) (mem. op.) (noting that rescission is remedy available under DTPA claim and not independent action). We overrule the Pates' seventh and eighth issues because the Pates have no surviving claim for which they could receive revocation, rescission, or restoration relief. In their ninth issue, the Pates acknowledge that they had not offered to return any benefit they derived from the travel trailer when the summary-judgment motion was filed, but assert that they later filed an amended petition offering to do so. We need not consider the Pates' ninth issue, which supplements the arguments raised in issues seven and eight. *See* Tex. R. App. P. 47.1.

## CONCLUSION

We conclude the trial court did not err when it granted Fun Town's motion for summary judgment on the Pates' claims. We affirm the judgment of the trial court.

22

_____

Edward Smith, Justice

Before Chief Justice Byrne, Justices Kelly and Smith
  Concurring and Dissenting Opinion by Justice Kelly

Affirmed

Filed:  August 30, 2024